UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK

---------------------------------------------------- :
In re:                                                :
                                                      :    Chapter 11
GALLANT CAPITAL MARKETS, LTD.,   :
                                                      :
                    Debtor.            :    Case No. 17-41814-ESS
---------------------------------------------------- :

## COMBINED DISCLOSURE STATEMENT AND CHAPTER 11 PLAN OF LIQUIDATION PROPOSED BY THE CHAPTER 11 TRUSTEE OF GALLANT CAPITAL MARKETS, LTD.

**THE COURT HAS AUTHORIZED THE DEBTOR TO DISTRIBUTE THIS DISCLOSURE STATEMENT BEFORE ITS FINAL APPROVAL BY THE COURT. IF AN OBJECTION TO THIS DISCLOSURE STATEMENT IS FILED BY A PARTY IN INTEREST, FINAL APPROVAL OF THIS DISCLOSURE STATEMENT WILL BE CONSIDERED AT, OR BEFORE, THE HEARING ON CONFIRMATION OF THE PLAN.**

**LAMONICA HERBST & MANISCALCO, LLP**
**Gary F. Herbst, Esq.**
**Jacqulyn Somers Loftin, Esq.**
**3305 Jerusalem Avenue, Suite 201**
**Wantagh, New York 11793**
**Tel: (516) 826-6500**
**gh@lhmlawfirm.com**
**jsl@lhmlawfirm.com**
*Counsel to the Chapter 11 Trustee*

**PORZIO, BROMBERG & NEWMAN, P.C.**
**John S. Mairo, Esq.**
**Robert M. Schechter, Esq.**
**David E. Sklar, Esq.**
**156 West 56th Street, Suite 803**
**New York, New York 10019-3800**
**Tel: (212) 265-6888**
**jsmairo@pbnlaw.com**
**mschechter@pbnlaw.com**
**desklar@pbnlaw.com**
*Special Counsel to the Chapter 11 Trustee*

October 22, 2020

# **TABLE OF CONTENTS**

DISCLAIMER ........................................................................................................................ 1

INTRODUCTION ................................................................................................................. 2

ARTICLE I DEFINED TERMS AND RULES OF INTERPRETATION ................................... 3

    Defined Terms ................................................................................................................ 3

    Rules of Interpretation ................................................................................................... 9

    Appendices and Plan Documents.................................................................................. 10

ARTICLE II TREATMENT OF UNCLASSIFIED CLAIMS ................................................... 11

    2.1    Administrative Expenses .................................................................................... 11

    2.2    Administrative Claims ........................................................................................ 11

ARTICLE III CLASSIFICATION OF CLAIMS AND INTERESTS AND ESTIMATED
RECOVERIES.................................................................................................................... 12

    3.1    General Rules of Classification ........................................................................... 12

    3.2    Unimpaired Class of Claims. .............................................................................. 14

    3.3    Impaired Classes of Claims. ............................................................................... 14

    3.4    Impaired Class of Interests................................................................................. 14

ARTICLE IV BACKGROUND AND DISCLOSURES.......................................................... 15

    4.1 General Background and Events Leading to the Chapter 11 Filing ........................... 15

    4.2    Events Leading to Chapter 11 ............................................................................ 15

    4.3    The Debtors' Bankruptcy Cases ......................................................................... 15

        (a)    Generally................................................................................................ 15

        (b)    United States Trustee's Motion to Appoint a Trustee ............................... 16

        (c)    Appointment of a Trustee and Subsequent Actions Taken as to assets and
            disbursements of Gallant and Avenica .................................................... 18

ARTICLE V CONFIRMATION AND VOTING PROCEDURES ............................................ 19

    5.1 Confirmation Procedure.......................................................................................... 19

    5.2 Procedure for Objections ........................................................................................ 20

    5.3 Requirements for Confirmation ................................................................................ 20

    5.4 Classification of Claims and Interests....................................................................... 20

    5.5 Impaired Claims or Interests ................................................................................... 22

    5.6 Confirmation without Necessary Acceptances: Cramdown ....................................... 22

    5.7 Feasibility............................................................................................................... 23

    5.8 Best Interests Test and Liquidation Analysis............................................................. 23

    5.9 Acceptance of the Plan............................................................................................ 24

ARTICLE VI CERTAIN RISK FACTORS TO BE CONSIDERED PRIOR TO VOTING....... 25

    6.1 The Plan May Not Be Accepted. .............................................................................. 25

    6.2 The Plan May Not Be Confirmed. ............................................................................ 25

    6.3 Distributions to Holders of Allowed Claims Under the Plan May Be
          Inconsistent with Projections. .......................................................................... 25

    6.4 Objections to Classification of Claims. ..................................................................... 26

    6.5 Failure to Consummate the Plan. ............................................................................. 26

    6.6 Allowance of Claims May Substantially Dilute the Recovery to
          Holders of Claims under the Plan. .................................................................... 27

    6.7 Certain Tax Considerations...................................................................................... 27

ARTICLE VII MEANS OF IMPLEMENTING THE PLAN ...................................................... 27
    7.1 Corporate Action.................................................................................................. 27
    7.2 Liquidating Trust. ............................................................................................... 28
    7.3 Liquidating Trustee ............................................................................................ 29
    7.4 Fees and Expenses ............................................................................................. 30
    7.5 Tax Treatment of Holders of Liquidating Trust Interests.................................. 30
    7.6 Nature of Liquidating Trust Interests................................................................. 30
    7.7 No Revesting of Assets ...................................................................................... 31
    7.8 Exemption from Certain Transfer Taxes ........................................................... 31
    7.9 Preservation of Remaining Causes Actions ....................................................... 31
    7.10 Release of Liens ............................................................................................... 32
    7.11 Setoffs .............................................................................................................. 32
    7.12 Withdrawal of Plan .......................................................................................... 32
    7.13 Settlement Among Trustee and Class 2 Claim Holders.................................... 32
ARTICLE VIII EFFECT OF PLAN ON CLAIMS AND INTERESTS ................................... 33
    8.1 Binding Effect.................................................................................................... 33
    8.2 Compromise and Settlement .............................................................................. 33
    8.3 No Discharge of Gallant .................................................................................... 33
    8.4 Injunction ........................................................................................................... 33
    8.5 Exculpation ........................................................................................................ 34
    8.6 Terms of Injunctions or Stays ........................................................................... 34
ARTICLE IX EXECUTORY CONTRACTS AND UNEXPIRED LEASES ........................... 34
    9.1 Rejection of Executory Contracts and Unexpired Leases.................................. 34
    9.2 Supplemental Bar Date for Rejection Damages ................................................ 35
ARTICLE X DISTRIBUTIONS................................................................................................ 35
    10.1 No Distributions on Disputed Claims............................................................... 35
    10.2 Distributions on Claims Allowed After the Effective Date .............................. 35
    10.3 Objections to and Estimation of Claims ........................................................... 35
    10.4 Delivery of Distributions and Undeliverable or Unclaimed
        Distributions................................................................................................... 36
    10.5 Interest on Claims ............................................................................................. 37
    10.6 Withholding and Reporting Requirements ....................................................... 37
    10.7 Miscellaneous Distribution Provisions. ........................................................... 38
    10.8 De Minimis Distribution Provisions ................................................................ 38
ARTICLE XI CONFIRMATION AND CONSUMMATION OF THE PLAN.......................... 38
    11.1 Conditions to Confirmation .............................................................................. 38
    11.2 Conditions to Effective Date............................................................................. 39
    11.3 Consequences of Non-Occurrence of Effective Date ....................................... 39
ARTICLE XII ADMINISTRATIVE PROVISIONS ................................................................. 39
    12.1 Retention of Jurisdiction .................................................................................. 39
    12.2 Amendments. .................................................................................................... 41
    12.3 Successors and Assigns..................................................................................... 42
    12.4 Governing Law ................................................................................................. 42
    12.5 Corporate Action............................................................................................... 42
    12.6 Effectuating Documents and Further Transactions........................................... 42
    12.7 Confirmation Order and Plan Control............................................................... 42

12.8 Notices ............................................................................................................... 42
12.9 No Admissions or Waiver....................................................................................... 43

## DISCLAIMER

THIS COMBINED DISCLOSURE STATEMENT AND PLAN WAS COMPILED FROM INFORMATION OBTAINED FROM NUMEROUS SOURCES BELIEVED TO BE ACCURATE TO THE BEST OF THE PROPONENT'S KNOWLEDGE, INFORMATION, AND BELIEF.   NO GOVERNMENTAL AUTHORITY HAS PASSED ON, CONFIRMED OR DETERMINED THE ACCURACY OR ADEQUACY OF THE INFORMATION CONTAINED HEREIN.

NOTHING STATED HEREIN SHALL BE: (I) DEEMED OR CONSTRUED AS AN ADMISSION OF ANY FACT OR LIABILITY BY ANY PARTY, (II) ADMISSIBLE IN ANY PROCEEDING INVOLVING THE TRUSTEE OR ANY OTHER PROPONENT, OR (III) DEEMED CONCLUSIVE EVIDENCE OF THE TAX OR OTHER LEGAL EFFECTS OF THE COMBINED DISCLOSURE STATEMENT AND PLAN ON THE PROPONENT OR HOLDERS OF CLAIMS OR INTERESTS. CERTAIN STATEMENTS CONTAINED HEREIN, BY NATURE, ARE FORWARD-LOOKING AND CONTAIN ESTIMATES AND ASSUMPTIONS.  THERE CAN BE NO ASSURANCE THAT SUCH STATEMENTS WILL REFLECT ACTUAL OUTCOMES.

THE COMBINED DISCLOSURE STATEMENT AND PLAN CONTEMPLATES THE LIQUIDATION OF GALLANT CAPITAL MARKETS, LTD., AND PAYMENTS TO CERTAIN CREDITORS. THE LIQUIDATING TRUST WILL BE GOVERNED BY THIS PLAN AND THE LIQUIDATING TRUST AGREEMENT.  THE LIQUIDATING TRUST AGREEMENT WILL SET FORTH THE RIGHTS, POWERS, DUTIES, AND RESPONSIBILITIES OF THE LIQUIDATING TRUST, AS SUPPLEMENTED BY THE PROVISIONS OF THIS PLAN.

NO PARTY IS AUTHORIZED TO GIVE ANY INFORMATION WITH RESPECT TO THE COMBINED DISCLOSURE STATEMENT AND PLAN OTHER THAN WHAT IS CONTAINED IN THIS COMBINED DISCLOSURE STATEMENT AND PLAN.   NO REPRESENTATIONS CONCERNING GALLANT CAPITAL MARKETS, LTD., OR THE VALUE OF ITS PROPERTY HAS BEEN AUTHORIZED BY THE TRUSTEE OTHER THAN AS SET FORTH IN THIS COMBINED DISCLOSURE STATEMENT AND PLAN. ANY INFORMATION, REPRESENTATIONS, OR INDUCEMENTS MADE TO OBTAIN AN ACCEPTANCE OF THE COMBINED DISCLOSURE STATEMENT AND PLAN OTHER THAN, OR INCONSISTENT WITH, THE INFORMATION CONTAINED HEREIN AND THEREIN SHOULD NOT BE RELIED UPON BY ANY HOLDER OF A CLAIM OR INTEREST.   THIS COMBINED DISCLOSURE STATEMENT AND PLAN HAS BEEN PREPARED IN ACCORDANCE WITH SECTION 1125 OF THE BANKRUPTCY CODE, BANKRUPTCY RULE 3016(b), AND LOCAL RULE 3017-2, AND NOT IN ACCORDANCE WITH FEDERAL OR STATE SECURITIES LAWS OR OTHER NON-APPLICABLE BANKRUPTCY LAWS.  THIS COMBINED DISCLOSURE STATEMENT AND PLAN HAS NOT BEEN APPROVED OR DISAPPROVED BY THE UNITED STATES SECURITIES AND EXCHANGE COMMISSION (THE "SEC"), NOR HAS THE SEC PASSED UPON THE ACCURACY OR ADEQUACY OF THE STATEMENTS CONTAINED HEREIN.

SEE ARTICLE V OF THIS COMBINED DISCLOSURE STATEMENT AND PLAN, ENTITLED "CERTAIN RISK FACTORS TO BE CONSIDERED PRIOR TO VOTING," FOR A DISCUSSION OF CERTAIN CONSIDERATIONS IN CONNECTION WITH A DECISION BY A HOLDER OF AN IMPAIRED CLAIM TO ACCEPT THE COMBINED DISCLOSURE STATEMENT AND PLAN.

## INTRODUCTION

Esther DuVal, as Chapter 11 Trustee in the jointly administered Chapter 11 Bankruptcy Cases of Avenica, Inc.[1] and Gallant Capital Markets, Ltd. hereby presents this Combined Disclosure Statement and Plan for the liquidation of Gallant Capital Markets, Ltd.'s remaining assets and Distribution of the proceeds of its Estate's assets to the Holders of Allowed Claims against Gallant Capital Markets, Ltd. as set forth herein.

This Combined Disclosure Statement and Plan contains, among other things, a discussion of Gallant Capital Markets, Ltd.'s history, businesses, properties, operations, its bankruptcy case, risk factors, summary and analysis of this Plan, and certain other related matters.

YOU ARE ENCOURAGED TO READ THE COMBINED DISCLOSURE STATEMENT AND PLAN IN ITS ENTIRETY, AND TO CONSULT WITH AN ATTORNEY BEFORE VOTING TO ACCEPT OR REJECT THE PLAN.  SUBJECT TO CERTAIN RESTRICTIONS AND REQUIREMENTS SET FORTH IN SECTION 1127 OF THE BANKRUPTCY CODE, BANKRUPTCY RULE 3019, AND IN THE PLAN, THE TRUSTEE RESERVES THE RIGHT TO ALTER, AMEND, MODIFY, REVOKE, OR WITHDRAW THE PLAN, OR ANY PART THEREOF, PRIOR TO ITS SUBSTANTIAL CONSUMMATION.

---

[1] The Trustee will be moving to convert Avenica, Inc.'s bankruptcy case to a Chapter 7 bankruptcy proceeding. Avenica, Inc. does not possess sufficient assets to justify presenting a plan of reorganization before the Court, as evidenced by its most recently filed monthly operating report for September 2020 (the "September Report"). The September Report show that Avenica Inc.'s bank accounts held $8.80 and did not have any activity into and out of the accounts during the month. [ECF No. 302].  For the avoidance of doubt, unless otherwise explicitly stated in this Plan, none of the provisions of this Plan apply to Claims against Avenica, Inc.

# ARTICLE I
# DEFINED TERMS AND RULES OF INTERPRETATION

**Defined Terms**

1.1 "Administrative Claim" shall mean an unsecured Claim for payment of costs or expenses of administration specified in Bankruptcy Code sections 503(b) and 507(a)(1), including the actual, necessary costs and expenses incurred after the Petition Date of preserving Gallant's estate and operating the business of Gallant.

1.2 "Administrative Claims Estimate" shall mean a good faith estimate by the Trustee of the total amount of Administrative, Tax, and Other Priority Claims that may be Allowed against Gallant, unless by the applicable Bar Date, any of such claims are fixed, in which case, the estimate shall include such fixed amount, subject to the Bankruptcy Court ordering otherwise.

1.3 "Affiliate" shall mean "affiliate" as defined in section 101(2) of the Bankruptcy Code.

1.4 "Allowed Claim" shall mean a Claim to the extent such Claim is:  (a) either (i) scheduled by the Debtor in its Schedules in a liquidated amount and not listed as contingent, unliquidated, zero, undetermined or disputed; or (ii) asserted in Gallant's Chapter 11 case by a proof of claim which has been timely filed, or deemed timely filed, in accordance with the procedures set forth in the Bar Date Order or late filed with leave of the Bankruptcy Court; and (b) either (i) not objected to within the period fixed by the Bankruptcy Code, the Bankruptcy Rules and/or applicable orders of the Bankruptcy Court; or (ii) that has otherwise been allowed by a final order or pursuant to the Plan.  An Allowed Claim: (y) includes a previously Disputed Claim to the extent such Disputed Claim becomes allowed when the context so requires, and (z) shall be net of any valid setoff amount[2], which amount shall be deemed to have been set off in accordance with the provisions of the Plan.  For the avoidance of doubt, any Claim that is withdrawn shall not be an Allowed Claim.

1.5 "Avenica" shall mean Chapter 11 Debtor Avenica, Inc. bearing Case Number 17-41813.

1.6 "Ballot" shall mean the form approved by the Bankruptcy Court and distributed to Holders of Claims entitled to vote on this Plan on which is to be indicated an acceptance or rejection of this Plan.

1.7 "Bankruptcy Code" shall mean title 11 of the United States Code, as now in effect or hereafter amended.

1.8 "Bankruptcy Court" shall mean the United States Bankruptcy Court for the Eastern District of New York.

1.09 "Bankruptcy Rules" shall mean the Federal Rules of Bankruptcy Procedure and the Local Rules.

1.10 "Bar Date" shall mean, with respect to any particular Claim, the specific date set forth in the Bar Date Order as the last day for filing a proof of claim or a request for allowance of an Administrative Claim or a proof of interest against Gallant in its bankruptcy case for that specific Claim.

1.11 "Bar Date Order" shall mean Order Establishing Deadline for Filing Proofs of Claim and Approving the Form and Manner of Notice Thereof as such order applies to Claims against Gallant. [ECF No. 191, 17-41813; ECF No. 146, 17-41814].

1.12 "Business Day" shall mean any day, other than a Saturday, Sunday, or a legal holiday (as used in Bankruptcy Rule 9006(a)).

1.13 "Cash" shall mean legal tender of the United States of America or its equivalents, including. but not limited to, bank deposits, checks, and other similar items.

1.14 "Causes of Action" shall mean any and all actions, suits, claims for relief, causes of action, Chapter 5 Causes of Action, accounts, controversies, agreements, promises, rights to legal remedies, rights to equitable remedies, rights to payment, and Claims, whether known or unknown, reduced to judgment, not reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, secured, unsecured, and whether asserted or assertable directly or derivatively, in law, equity or otherwise, whether arising prior to or after the Petition Date. Causes of Action include, but are not limited to, those Causes of Action listed on **Exhibit "1"**, which Exhibit may be modified up through and including the Confirmation Hearing.

1.15 "Chapter 5 Causes of Action" shall mean any and all actual or potential claims and causes of action arising under Chapter 5 of the Bankruptcy Code, including claims, rights, and causes of action arising under sections 510, 544, 545, 547, 548, 549, 550, 551, and 553(b) of the Bankruptcy Code, including but not limited to, the recovery of preferences and fraudulent transfers from any Entity that received cash or any other interest in property from Gallant.

1.16 "Chapter 11 Cases" shall mean these Chapter 11 Cases commenced by the Debtors and jointly administered under case number 17-41813-ESS in the Bankruptcy Court.

1.17 "Claim" shall mean a claim, as such term is defined in Bankruptcy Code section 101(5), against Gallant.

1.18 "Claims Objection Deadline" shall mean one hundred twenty (120) days after the Effective Date, or such later date as may be ordered by the Bankruptcy Court; *provided, however*, that the Liquidating Trust may seek extensions of this date by filing a motion with the Bankruptcy Court. The filing of a motion to extend the Claims Objection Deadline shall automatically extend the Claims Objection Deadline until a Final Order is entered on such motion, consistent with Local Rule 9006-2. In the event that such motion to extend the Claims Objection Deadline is denied, the Claims Objection Deadline shall be the later of the current Claims Objection Deadline (as previously extended, if applicable) or thirty (30) days after the Bankruptcy Court's entry of an order denying the motion to extend the Claims Objection Deadline.

1.19 "Class" shall mean a group of Claims or Interests described in Article III of this Plan.

1.20 "Combined Disclosure Statement and Plan" means this combined disclosure statement and chapter 11 plan of liquidation, including, without limitation, all exhibits, supplements, appendices, and schedules hereto, either in their present form, or as the same may be altered, amended, or modified from time to time.

1.21 "Confirmation Date" shall mean the date upon which the Bankruptcy Court enters the Confirmation Order on the docket of Gallant's Chapter 11 case.

1.22 "Confirmation Hearing" shall mean the first hearing held by the Bankruptcy Court to consider confirmation of the Plan.

1.23 "Confirmation Order" shall mean an order of the Bankruptcy Court confirming this Plan pursuant to, among others, section 1129 of the Bankruptcy Code.

1.24 "Debtors" shall mean Gallant Capital Markets, Ltd. and Avenica, Inc.

1.25 "Disallowed" shall mean, when used in reference to a Claim, all or that portion, as applicable, of any Claim that has been disallowed under the Combined Disclosure Statement and Plan, the Bankruptcy Code, applicable law, or by a Final Order.

1.26 "Disclosure Statement" shall mean the disclosure statement, as amended, supplemented or modified from time to time, that is embodied within this Combined Disclosure Statement and Plan and distributed in accordance with sections 1125, 1126(b), and 1145 of the Bankruptcy Code, Bankruptcy Rule 3018, Local Rule 3017-1, and other applicable law.

1.27 "Disputed Claim" shall mean that portion (including, when appropriate, the whole) of a Claim, if any, that is not an Allowed Claim.

1.28 "Distribution" shall mean the distribution of Cash or other property, as the case may be, in accordance with the Plan.

1.29 "Distribution Address" shall mean the address set forth in:  (a) the Proof of Claim filed by the Holder, (b) any written notice of address change delivered to the Trustee or Liquidating Trust/Liquidating Trustee, as applicable, after the date of filing of any related Proof of Claim, (c) the Schedules, if no Proof of Claim has been filed and the Trustee or Liquidating Trust/Liquidating Trustee, as applicable, has not received a written notice of a change of address, (d) the other records of the Trustee or the Liquidating Trust at the time of the Distribution if no Proof of Claim has been filed, the Trustee or Liquidating Trust/Liquidating Trustee, as applicable, has not received a written notice of a change of address, and the Schedules do not include an address, or (e) any change of address as reflected on the Bankruptcy Court docket.

1.30 "Distribution Date" shall mean the date determined by the Liquidating Trust when Distributions shall be made under the Plan.

1.31 "Effective Date" shall mean the first date on which all of the conditions of Section 11.2 of the Plan have been satisfied or have been waived in writing.

1.32 "Entity" shall have the meaning ascribed to such term in section 101(15) of the Bankruptcy Code.

1.33 "Estate" shall mean the estate of Gallant created by section 541 of the Bankruptcy Code upon the commencement of Gallant's Chapter 11 case on the Petition Date.

1.34 "Estimation Order" shall mean an order, or orders, of the Bankruptcy Court estimating for voting and/or Distribution purposes (under section 502(c) of the Bankruptcy Code) the amount of any Claim, or the aggregate (and if applicable, individual) Face Amount of Disputed Claims in each relevant Class.  The defined term Estimation Order includes the Confirmation Order if the Confirmation Order grants the same relief that would have been granted in a separate Estimation Order.

1.35 "Exculpated Parties" shall mean, collectively: (a) the Trustee; and (b) the following Professionals: (1) LaMonica Herbst & Maniscalco, LLP (2) Porzio, Bromberg & Newman, P.C., (3) CBIZ Accounting, Tax and Advisory of New York, LLC and (4) CBIZ National Tax Office, LLC.

1.36 "Executory Contract" shall mean a contract or lease to which the Debtor is a party that is subject to assumption or rejection under section 365 of the Bankruptcy Code.

1.37 "Face Amount" shall mean:  (a) with respect to any Claim for which a proof of claim is filed, an amount equal to: (i) the liquidated amount, if any, set forth therein, or (ii) any other amount set forth in an Estimation Order; or (b) with respect to any Claim scheduled in Gallant's Schedules, but for which no proof of claim is timely filed, the amount of the Claim scheduled as undisputed, noncontingent, and liquidated.

1.38 "Fee Claim" shall mean a Claim for compensation or reimbursement of expenses of a Professional pursuant to sections 327, 328, 330, 331, 503(b), or 1103 of the Bankruptcy Code in connection with Gallant's Chapter 11 case. The term "Fee Claim" does not include any Claim for compensation or reimbursement of expenses related to services rendered after the Effective Date by the Liquidating Trust's Professionals.

1.39 "File," "Filed," or "Filing" shall mean, respectively, file, filed, or filing with the Bankruptcy Court or its authorized designee in the Chapter 11 Cases.

1.40 "Final Order" shall mean an order or judgment of the Bankruptcy Court, as entered on the docket of the Bankruptcy Court, that has not been reversed, stayed, modified, or amended, and as to which:  (a) the time to appeal, seek review, rehearing, or to file a petition for certiorari has expired and no timely filed appeal or petition for review, rehearing, remand, or certiorari is pending, or (b) any appeal taken, or petition for certiorari filed, has been resolved by the highest court to which the order or judgment was appealed, or from which certiorari was sought; *provided,*

*however*, that the possibility that a motion under section 502(j) of the Bankruptcy Code, Rule 59 or Rule 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Bankruptcy Rules or other rules governing procedure in cases before the Bankruptcy Court, may be filed with respect to such order shall not cause such order not to be deemed a Final Order.

1.41 "Gallant" shall mean Chapter 11 Debtor Gallant Capital Markets, Ltd.

1.42 "General Unsecured Claim" shall mean a Claim that is not: (a) an Administrative Claim[3], (b) Secured Claim, (c) a Priority Tax Claim, (d) Other Priority Claim, or (f) an Interest.

1.43 "Governmental Unit" shall have the meaning ascribed to such term in section 101(27) of the Bankruptcy Code.

1.44 ***Intentionally Omitted***

1.45 "Holder" or "Holders" shall mean a Person or an Entity holding a Claim or Interest.

1.46 "Impaired" shall mean, when used in reference to a Claim or Interest, a Claim or Interest that is impaired within the meaning of section 1124 of the Bankruptcy Code.

1.47 "Impaired Class" shall mean a Class of Claims or Interests that is Impaired.

1.48 "Insider" shall have the meaning ascribed to such term in section 101(31) of the Bankruptcy Code.

1.49 "Interest" shall mean an equity security, within the meaning of Bankruptcy Code section 101(16), in Gallant.

1.50 "Lien" shall mean: (a) a judicial lien as defined in section 101(36) of the Bankruptcy Code; (b) a lien as defined in section 101(37) of the Bankruptcy Code; (c) a security interest as defined in section 101(51) of the Bankruptcy Code; (d) a statutory lien as defined in section 101(53) of the Bankruptcy Code; and (e) any other lien, interest, charge, or encumbrance.

1.51 "Liquidating Trust" shall be the entity organized for the primary purpose of liquidating and distributing the assets transferred to it in accordance with the Plan. The day-to-day affairs of the Liquidating Trust shall be managed by the Liquidating Trustee, who will be appointed on the Effective Date, in accordance with the Liquidating Trust Agreement and this Plan.

1.52 "Liquidating Trustee" shall be Ron Friedman of Silverman Acampora LLP who will be appointed as of the Effective Date, as the employee or fiduciary responsible for managing the day-to-day affairs of the Liquidating Trust in accordance with the Liquidating Trust Agreement and this Plan.

1.53 "Liquidating Trust Agreement" means the document governing the Liquidating Trust specifying the rights, duties and responsibilities of the Liquidating Trust and the Liquidating

Trustee for the benefit of Gallant's creditors to effectuate their treatment under the Plan and the liquidation of Gallant.

1.54 "Local Rules" shall mean the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the Eastern District of New York as now in effect or hereafter amended.

1.55 "Objection(s)" shall mean any objection, application, motion, complaint, or any other legal action seeking, in whole or in part, to disallow, determine, liquidate, classify, reclassify, establish the priority of, expunge, subordinate, or estimate any Claim (including any objection or opposition to any request for allowance or payment of any Administrative Claim).

1.56 "Other Priority Claim" shall mean any Claim entitled to priority under sections 503(b) or 507(a)(2) of the Bankruptcy Code that is not a Priority Tax Claim, including, but not limited to Holders of Deposit Accounts with Gallant Entitled to Statutory Priority pursuant to 17 CFR § 190.08.

1.57 "Person" shall mean any individual, corporation, partnership, association, indenture trustee, organization, joint stock company, joint venture, estate, trust, governmental unit, or any political subdivision thereof, Holders of Interests, Holders of Claims, current or former employees of the Debtor, or any other Entity.

1.58 "Petition Date" shall mean April 14, 2017, the date on which Gallant commenced its bankruptcy case in the Bankruptcy Court.

1.59 "Plan" shall mean this plan of liquidation under chapter 11 of the Bankruptcy Code, together with any amendments or modifications hereto as the Trustee may file hereafter in accordance with the terms of this Plan.

1.60 "Plan Documents" shall mean the documents, including this Combined Disclosure Statement and Plan, to be executed, delivered, assumed, and/or performed in connection with the consummation of this Plan, including, without limitation, the documents to be included in the Plan Supplement, and any and all exhibits to the Plan and the Disclosure Statement.

1.61 "Plan Supplement" shall mean the supplemental appendix to this Plan, filed with the Bankruptcy Court not less than seven (7) calendar days prior to the Voting Deadline, which contains, among other things, draft forms or signed copies, as the case may be, of the Liquidating Trust Agreement, and any schedules, lists, or documents that supplement or clarify aspects of this Plan and are identified as part of the Plan Supplement.

1.62 "Priority Tax Claim" shall mean any Claim of a governmental unit (as defined in section 101(27) of the Bankruptcy Code) of the kind entitled to priority in payment under sections 502(i) and 507(a)(8) of the Bankruptcy Code.

1.63 "Professional" shall mean any professional Person or Entity employed in the Chapter 11 Cases by Court order pursuant to Bankruptcy Code sections 327, 328, 363, or 1103 or otherwise.

1.64 "Proponent" shall mean the Trustee.

1.65 "Schedules" shall mean the schedules of assets and liabilities, and statements of financial affairs Filed by Gallant pursuant to section 521 of the Bankruptcy Code and in substantial accordance with the Official Bankruptcy Forms, as the same may have been amended, modified, or supplemented from time to time.

1.66 "Secured Claim" shall mean a Claim: (a) secured by a lien on collateral to the extent of the value of such collateral, as determined in accordance with section 506(a) of the Bankruptcy Code, or (b) Allowed as such under this Plan (subject to the Confirmation Order becoming a Final Order).

1.67 The "Trustee" shall mean Esther DuVal, as Chapter 11 Trustee in the Chapter 11 Bankruptcy Cases of Avenica, and Gallant.

1.68 "Unclaimed Distributions" shall mean any Cash or other distributable property unclaimed on or after the Effective Date, or the date on which an additional Distribution would have been made in respect of an Allowed Claim.  Unclaimed Distributions shall include:  (a) checks (and the funds represented thereby) mailed to a Distribution Address and returned as undeliverable without a proper forwarding address, (b) funds for checks that have not been cashed within ninety (90) days of the mailing of the Distribution upon which time the Liquidating Trust may issue a stop payment, (c) checks (and the funds represented thereby) not mailed or delivered because no Distribution Address to mail or deliver such property was available, and (d) any Distribution deemed to be an Unclaimed Distribution pursuant to [Section 10.5] hereof.

1.69 "Unimpaired" shall mean, when used in reference to a Claim or Interest, any Claim or Interest that is not impaired within the meaning of section 1124 of the Bankruptcy Code.

1.70 "U.S. Trustee" shall mean the Office of the United States Trustee for Region 2.

1.71 "U.S. Trustee Fees" shall mean fees payable pursuant to 28 U.S.C. § 1930, to the extent applicable to the Chapter 11 Cases.

1.72 "Voting Deadline" shall mean the date specified in the Combined Plan and Disclosure Statement, the Ballots, the Interim Approval and Procedures Order, and/or any related solicitation documents approved by the Bankruptcy Court through the in the Order to be entered by the Court to approve the combined plan and disclosure statement as the last date for Holders of Claims entitled to vote on this Plan to submit their Ballots with respect to this Plan, as such date may be extended by the Trustee.

**Rules of Interpretation**

1.73 Unless otherwise specified herein, all section or exhibit references in this Plan are to the respective section in, or exhibit to, this Plan. The words "herein," "hereof," "hereto," "hereunder," and other words of similar import refer to this Plan as a whole and not to any

particular section, subsection, or clause contained therein, unless the context requires otherwise. The words "include" and "including" shall mean "include, without limitation," or "including," as the case may be.  Whenever from the context it is appropriate, each term, whether stated in the singular or the plural, will include both the singular and the plural. Any term that is not otherwise defined herein, but that is used in the Bankruptcy Code or the Bankruptcy Rules, shall have the meaning given to that term in the Bankruptcy Code or the Bankruptcy Rules, as applicable.

1.74 Any reference in this Plan to a contract, instrument, release, indenture, or other agreement or documents being in a particular form, or on particular terms and conditions, means that such document shall be substantially in such form or substantially on such terms and conditions, and any reference in this Plan to an existing document or exhibit filed or to be filed means such document or exhibit as it may have been or may be amended, modified, or supplemented.  Subject to the provisions of any contract, certificates or articles of incorporation, by-laws, instruments, release, or other agreements or documents entered into in connection with this Plan, the rights and obligations arising under this Plan shall be governed by, and construed and enforced in accordance with, federal law, including the Bankruptcy Code and Bankruptcy Rules.

1.75 The captions and headings in this Plan are for convenience of reference only and shall not limit or otherwise affect the provisions hereof.  Any reference to any Entity as a holder of a Claim or Interest includes that Entity's successors and assigns.

1.76 Rules of Construction.

(a) Undefined Terms.  Any term used herein that is not defined herein shall have the meaning ascribed to any such term used in the Bankruptcy Code and/or the Bankruptcy Rules, if used therein.

(b) Miscellaneous Rules. This Combined Disclosure Statement and Plan is subject to the following miscellaneous rules: (i) the rules of construction set forth in section 102 of the Bankruptcy Code shall apply, unless superseded herein or in the Confirmation Order; (ii) any reference in this Plan to an existing document or Exhibit means such document or Exhibit as it may have been amended, restated, modified or supplemented as of the Effective Date; (iii) in computing any period of time prescribed or allowed by this Plan, the provisions of Bankruptcy Rule 9006(a) shall apply; and (iv) whenever this Plan provides that a payment or Distribution shall occur "on" any date, it shall mean "on, or as soon as reasonably practicable after," such date.

**Appendices and Plan Documents**

**1.77 All Plan Documents and appendices to the Plan are incorporated into the Plan by reference and are a part of the Plan as if set forth in full herein.  The documents contained in the exhibits and Plan Supplement shall be approved by the Bankruptcy Court pursuant to the Confirmation Order.  Holders of Claims and Interests may (i) inspect a copy of the Plan Documents once filed, in the Office of the Clerk of the Bankruptcy Court during normal business hours, or (ii) access the Plan Documents through the Electronic Court Filing system at https://ecf.nyeb.uscourts.gov/cgi-bin/login.pl.  If seeking to access the documents through**

**the Electronic Court Filing system, you will need to create an account and there will be a per page charge in connection with retrieving the documents.**

## ARTICLE II
## TREATMENT OF UNCLASSIFIED CLAIMS

Pursuant to Bankruptcy Code section 1126(f), Holders of Unimpaired Claims are conclusively presumed to have accepted the Plan.

**2.1 Administrative Expenses:** To the extent not already paid, all allowed Chapter 11 Administrative Expenses shall be paid on or before the Effective Date. With respect to U.S. Trustee Fees, all U.S. Trustee Fees that come due and owing on or before the Effective Date shall be paid by the Trustee on or before the Effective Date.  From and after the Effective Date, the Liquidating Trust shall pay the fees assessed against the Estate until such time as Gallant's Chapter 11 case is closed, dismissed, or converted.  Notwithstanding anything to the contrary in this Plan, the U.S. Trustee shall not be required to file a proof of claim for administrative expenses. The Administrative Expenses that shall be paid include the following: (a) U.S. Trustee Fees in the amount of $14,478; (b) the Estate's portion of mediation fee for the Honorable Judge Gropper in the amount of $2,940; (c) post-Petition Date accounts payable, as reflected in Gallant's monthly operating reports, in the amount of $63,635; (d) IT storage and management in the amount of $1,542; (e) GRM Box Destruction in the amount of $300; and (f) Bankruptcy Court fees in the amount of $350.

**2.2 Professional Fee Claims/Trustee's Commissions:** To the extent not already paid as of the Effective Date, each Holder of an Allowed Administrative Claim on account of a professional fees of retained professionals and commissions earned by the Trustee will receive a pro-rata share of the funds held by the Trustee after deduction of: (i) the administrative expenses set forth in section 2.1; (ii) $250,000 designated for the Class 2 Claim Holders to be transferred to the Liquidating Trust upon the Effective Date as agreed upon by the Holders of Allowed Administrative Claims specified in this Section 2.2, to be administered by the Liquidating Trustee subject to a Liquidating Trust Agreement (as defined below); and (iii) the singe holder of a Class 1 Claim as set forth below. The estimated total of remaining Allowed Administrative Claims on account of a professional fees of retained professionals and commissions earned by the Trustee is $2,000,000.00  There will not be sufficient funds to pay such claims in full so the Professionals and the Trustee will be paid a pro rata amount (approximately 45-49%) depending upon the final award amounts. The holders of Allowed Administrative Claims include: (a) the Trustee's commissions; (b) LaMonica Herbst & Maniscalco, LLP as counsel to the Trustee; (c) Porzio, Bromberg, & Newman as special counsel to the Trustee, (d) CBIZ Accounting, Tax and Advisory of New York, LLC and CBIZ National Tax Office, LLC as financial advisor to the Trustee; and (e) Shipkevich PLLC as Gallant's counsel.

After the carve-out to Class 2 Claim Holders, payment to the Class 1 Claim Holder, and amounts disbursed on account of the Trustee's administration of Gallant's Chapter 11 case, the Trustee anticipates having funds on hand in the amount of $1,000,984.99 to be distributed on a pro-rata basis to the Holders of Allowed Administrative Claims specified in this Section 2.2 on account of fees of the Trustee's retained professionals and commissions earned by the Trustee. Attached hereto as **Exhibit "2"** are charts fully setting forth the Trustee's receipts and

disbursements during the course of her administration of the Estate from the date of her appointment until the present.

From and after the Effective Date, any requirement that Professionals comply with sections 327 through 331 and 1103 of the Bankruptcy Code in seeking retention or compensation for services rendered after such date shall terminate, and the Liquidating Trust, may employ and pay any Professional, in accordance with the Liquidating Trust Agreement, in the ordinary course of business without any further notice to or action, order, or approval of the Bankruptcy Court; *provided, however*, that the Liquidating Trust shall comply with the reporting requirements set forth in the Liquidating Trust Agreement.

**ARTICLE III**
**CLASSIFICATION OF CLAIMS AND INTERESTS AND ESTIMATED RECOVERIES**

**THE PROJECTED RECOVERIES SET FORTH IN THE TABLE BELOW ARE ESTIMATES ONLY AND ARE THEREFORE SUBJECT TO MATERIAL CHANGE.**

**3.1 General Rules of Classification.** For brevity and convenience, the classification and treatment of Claims and Interests have been arranged into one chart. Except as otherwise provided by or permitted under the Plan, Gallant shall continue to exist as a separate legal entity and continue in its corporate existence beyond the Effective Date for the purposes provided in the Plan and the Liquidating Trust Agreement.

The information in the table below is provided in summary form for illustrative purposes only and is subject to material change based on certain contingencies, including those related to the claims reconciliation process. Actual recoveries may vary widely within these ranges, and without any changes to any of the assumptions underlying these amounts could result in material adjustments to recovery estimates provided herein and/or the actual Distribution received by Holders of Claims. The projected recoveries are based on information available to the Trustee as of the date hereof and reflect the Trustee's estimates as of the date hereof only. In addition to the cautionary notes contained elsewhere in the Combined Disclosure Statement and Plan, the Trustee emphasizes that she makes no representation as to the accuracy of these recovery estimates.

The Trustee expressly disclaims any obligation to update any estimates or assumptions after the date hereof on any basis (including new or different information received and/or errors discovered).

A Claim or Interest is placed in a particular Class only to the extent that the Claim or Interest falls within the description of that Class and is classified in other Classes to the extent that any portion of the Claim or Interest falls within the description of such other Classes. A Claim or Interest is also placed in a particular Class for the purpose of receiving Distributions pursuant to this Plan only to the extent that such Claim or Interest is an Allowed Claim in that Class and such Claim or Interest has not been paid, released or otherwise settled prior to the Effective Date.

In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Claims, including professional fees and Trustee commissions, and Priority Tax Claims, as described herein,

have not been classified, and the respective treatment of such unclassified Claims is set forth in Article II of the Plan.  The categories of Claims and Interests listed below classify Claims and Interests for all purposes, including voting, confirmation and Distribution under the Plan and are classified pursuant to sections 1122 and 1123(a)(1) of the Bankruptcy Code.

Except as otherwise explicitly provided in the Plan, nothing shall affect Gallant's rights and defenses, both legal and equitable, with respect to any Claims or Interests, including, but not limited to alleged rights of setoff or recoupment.

| CLASS | Plan Treatment | Status | Projected Recovery | Estimated Amount |
|---|---|---|---|---|
| Class 1: Holder of an Allowed Priority Tax Claim | The Class 1 Claim Holder shall be paid in full on the Effective Date of the Plan. | Unimpaired<br><br>Not Entitled to Vote | 100% | $14,578.40 |
| Class 2[4]: Other Priority Claims including Holders of Deposit Accounts with Gallant Entitled to Statutory Priority pursuant to 17 CFR § 190.08 | $250,000 shall be carved-out for the benefit of Class 2 Claim Holders to be administered by the Liquidating Trustee subject to a Liquidating Trust Agreement attached as Exhibit "3"[5] on the Effective Date for the benefit of Class 2 Claim Holders. | Impaired<br><br>Entitled to Vote | 19.7% | $250,000.00 |
| Class 3: General Unsecured Claims | Holders of Allowed Claims in Class 3 shall receive payment from the proceeds of the Gallant's Estate subject to the Liquidating Trust Agreement on a pro-rata basis until Class 3 Claims are paid in full. Class 3 Claims shall not be paid anything, unless and until, Class 2 Claims have been satisfied in full. | Impaired<br><br>Entitled to Vote | Unknown | Unknown |
| Class 4: Interests | Class 4 interests will not receive and distribution | Deemed to reject the Plan | None | None |

---

[4] The cost of administering the Liquidating Trust could dilute these recoveries.
[5] To be filed with the Court in advance of the hearing on the confirmation of the Combined Disclosure Statement and Plan.

| CLASS | Plan Treatment | Status | Projected Recovery | Estimated Amount |
|---|---|---|---|---|
| | under the Plan | | | |

**3.2  Unimpaired Class of Claims.**

**Class 1: Allowed Priority Tax Claim**. Class 1 shall consist of the Holder of an Allowed Priority Tax Claim. There was a single priority tax claim filed in Gallant's Chapter 11 case by the New York City Department of Finance for unpaid general corporate taxes. Class 1 Claims are unpaired and therefore not entitled to accept or reject the plan.

The Class 1 Claim Holder shall be paid in full upon the Effective Date of the Plan.

**3.3 Impaired Classes of Claims.**

**Class 2: Class 2 shall consist of Claims against Gallant by Customers with Deposit Accounts Entitled to Statutory Priority**. Class 2 shall consist of Holders of Deposit Accounts with Gallant entitled to a statutory priority against Gallant pursuant to 17 CFR § 190.08 under the Plan. Pursuant to the Class 2 Proofs of Claim, under applicable banking law, brokerage customers funds were supposed to be segregated, but were not, and therefore are entitled to priority. The Class 2 Claims are impaired by the Plan and entitled to vote to accept or reject the Plan.

$250,000 shall be placed into a priority fund subject to a Liquidating Trust Agreement attached as **Exhibit "3"** on the Effective Date for the benefit of Class 2 Claim Holders and administration of the Liquidating Trust. Each Holder of a Class 2 Claim will receive a beneficial interest in the Liquidating Trust as defined in the Liquidating Trust Agreement.

**Class 3: Class 3 shall consist of General Unsecured Claims against Gallant.**

Holders of Allowed Claims in Class 3 shall receive payment from the proceeds of the liquidation of Gallant's Estate from the Liquidating Trust, which shall be subject to the Liquidating Trust Agreement and the provisions of the Plan, on a pro-rata basis until Class 3 Claims are paid in full. Class 3 Claims shall not be paid anything unless and until Class 2 Claims have been satisfied in full. At present, the Trustee is not holding sufficient proceeds for Class 3 Claim Holders to receive any recovery under the Plan.

**3.4    Impaired Class of Interests.**

**Class 4: Interests** (Ownership of Gallant)**.** Class 4 shall consist of all ownership interests of Gallant. Because Holders of Class 4 Interests will not receive any Distribution under the Plan, Holders of Class 4 Interests are deemed to reject the Plan and, therefore, not entitled to vote on the Plan.

On the Effective Date, Interests in Gallant shall be canceled, released, and expunged without any Distribution on account of such Interests. Furthermore, the Trustee shall be discharged from any further duties in connection with the Interests.

## ARTICLE IV
## BACKGROUND AND DISCLOSURES

### 4.1 General Background and Events Leading to the Chapter 11 Filing

Prior to the filing of the Chapter 11 Cases Gallant was a foreign exchange brokerage registered by the F.S.C. in the British Virgin Islands. It was not registered in the United States. Gallant also had no employees.   Avenica was solely owned by Salvatore Bucatello ("Mr. Bucatello") and Gallant was solely owned by WSM Invest Ltd. ("WSM"). WSM was solely owned by Jerry Cupacheck. Mr. Buccatello initially owned Gallant as well, but transferred his ownership interest in Gallant to WSM for $1.00 in June 2014. However, Mr. Buccatello was the CEO of both WSM and Avenica.

There was a service level agreement between Avenica and Gallant whereas Avenica would provide staffing and other administrative services for Gallant and service its customers. The Debtors were structured in this fashion since the trading business was a brokerage registered in the British Virgin Islands and not the United States. Gallant's clients had brokerage accounts with Gallant that were opened under the law of the British Virgin Islands. Gallant's brokerage accounts with its clients were held subject to license agreements where the clients could make deposits and trade in currencies.

### 4.2      Events Leading to Chapter 11

Pursuant to the Declaration of Mr. Buccatello, the Debtors' financial difficulties were caused by a dispute with its main-counter party, AFX Capital Markets Ltd ("AFX"). [ECF No. 56 in 17-41813]. AFX was a company registered with the Cyprus Securities and Exchange Commission. The Debtors allege that AFX failed to process Gallant's redemption request in excess of $2,000,000. As a result, the Debtors allege that Gallant could not provide liquidity services to its clients. Therefore, Gallant ceased trading and filed for Chapter 11 bankruptcy. As of the Petition Date, the brokerage accounts were shut down.

### 4.3      The Debtors' Chapter 11 Cases

#### (a)      Generally

As set forth above, on the Petition Date, the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code in the Bankruptcy Court. The commencement of a chapter 11 case creates an estate that is composed of all of the legal and equitable interests of the debtor as of that date.  The Bankruptcy Code provides that a debtor is authorized to continue to operate its business and remain in possession of its property as a "debtor in possession."  By order entered August 15, 2017 [ECF No. 127], the Debtors' Chapter Cases are being jointly administered

for procedural purposes only. On May 30, 2017, an Order was entered Approving the Appointment of the Chapter 11 Trustee. [ECF No. 71].

The filing of the Debtors' bankruptcy petitions on the Petition Date triggered the immediate imposition of the automatic stay under section 362 of the Bankruptcy Code, which, with limited exceptions, enjoins all collection efforts and actions by creditors, the enforcement of Liens against property of the Debtors and both the commencement and the continuation of prepetition litigation against the Debtors. With certain limited exceptions and/or modifications as permitted by order of the Bankruptcy Court, the automatic stay remains in effect from the Petition Date until the Effective Date of the Plan.

     *(b)*       U.S. *Trustee's Motion to Appoint a Trustee*

On May 16, 2020, the U.S. Trustee filed a Motion to Appoint a Trustee or in the Alternative Dismiss the Debtors' Bankruptcy Case. [ECF No. 52, 17-41813; ECF No. 36, 17-41814]. In the Motion to Appoint a Trustee for Avenica, the U.S. Trustee listed the following and stated that Avenica demonstrated incompetence and gross mismanagement of its bankruptcy estate based on, among other things, the following examples[6]:

> 1) The Debtor filed the Amended Wage Motion seeking payment of prepetition wages to employees. ECF Doc. No. 38. At the hearing on the motion, the Debtor indicated that although it is seeking court approval to pay sixteen employees for prepetition work, it does not know how many employees are currently working on behalf of the Debtor. Id., ¶ 13.

> 2) The Debtor filed the 345 Motion seeking a limited waiver of the requirements of Section 345 on the grounds that it needs to maintain existing cash management systems to avoid disruptions of business operations. ECF Doc. No. 40, ¶ 31. However, as indicated in the 345 Motion, the Debtor has one bank account, and pursuant to Schedule A/B, the Debtor has opened a debtor-in-possession bank account at TD Bank. ECF Doc. Nos. 31, 40.

> 3) The Amended Joint Administration Motion, Petition and Schedules were signed by Buccatello under the penalty of perjury, all of which state that the Debtor and Gallant are owned by Buccatello. See ECF Doc. No. 1, 39. At the hearing held on April 28, 2017, the Debtor asserted that Gallant is owned by WSM Investment Ltd., which is owned entirely by Jerry Cupacheck. Weinberger Decl., at ¶ 23. The Debtor provided to the United States Trustee a copy of a document titled "Share Transfer Agreement" dated June 11, 2014, by which Buccatello transferred his shares in Gallant to WSM Invest Limited for $1.00. Exhibit A, "Share Transfer Agreement"; Weinberger Decl., at ¶ 24.

---

[6] Capitalized terms used in this Article 4 that are not otherwise defined shall have the meanings ascribed to such terms in various pleadings filed with the Court, provided, however, that any inconsistency between the terms of the Plan as set forth herein and the various pleadings filed with the Court  the terms of this Plan shall control.

Based upon the conflicting testimony and statements filed with the Court, it is unclear who the owner of Gallant is and whether Buccatello had the authority to act on behalf of the Debtor and Gallant.

[ECF No. 52; 17-41813].

In the corresponding motion filed to appoint a Chapter 11 Trustee for Gallant, the U.S. Trustee offered the following examples to establish that Gallant engaged in incompetence and gross mismanagement:

1) The Declaration, Petition and Schedules were signed by Buccatello under the penalty of perjury, all of which state that the Debtor is owned by Buccatello. See ECF Doc. No. 1, 11-1, 30. At the hearing held on April 28, 2017, the Debtor asserted that it is owned by WSM Investment Ltd., which is owned entirely by Jerry Cupacheck. Weinberger Decl., at ¶ 23. The Debtor also provided to the United States Trustee a copy of a "Transfer Share Agreement" dated June 11, 2014, in which Buccatello transferred his shares in the Debtor to WSM Investment Ltd., for $1.00. See Exhibit A. Based upon the conflicting testimony and statements filed with the Court, it is unclear who the owner of the Debtor is and whether Buccatello had the authority to act on behalf of the Debtor.

2) The Debtor filed the 345 Motion seeking a limited waiver of the requirements of Section 345 on the grounds that it needs to maintain existing cash management systems to avoid disruptions of business operations. As indicated in the 345 Motion and the Declaration, the Debtor closed its prepetition bank accounts and opened a debtor-in-possession bank account at TD Bank. ECF Doc. Nos. 11-1, 27. At the hearings on April 28, 2017 and May 10, 2017, the Debtor asserted that the Debtor is not operating and does not generate any income. Weinberger Decl., at ¶ 25. The Debtor also stated that has not closed its prepetition bank accounts because it has not converted its foreign currency funds into U.S. Dollars and has not transferred those funds into the DIP account. Weinberger Decl., at ¶¶ 28, 31.

[ECF No. 36-1, 17-41814].

The United States Trustee also moved to appoint a Chapter 11 Trustee on the basis that it would be in the best interest of Avenica's creditors and the Avenica's Bankruptcy Estate. The justification supplied by the United States Trustee was as follows:

Here, the Debtor has represented that it relies on Gallant as its sole source of revenue. ECF Doc. No. 40, ¶ 20. The Debtor is providing minimal services to Gallant post-petition and continues to invoice Gallant for services. Weinberger Decl., at ¶ 30. As of the Petition Date, Gallant is not operating and generating income. Id., at ¶ 27. At the hearing on May 10, 2017, the Debtor indicated that Gallant does not intend to restart operations in the near future, and the Debtor will use existing funds to pay expenses, including employee wages. Id., at ¶ 29-30. The debtor stated that its reorganization strategy included Gallant's recovery of lost

funds and to restart operations and/or to sell part of its assets. Weinberger Decl., at ¶ 31. Accordingly, the interests of creditors and the estate are best served by the appointment of a chapter 11 trustee who can take the steps required to bring funds into the estate to pay creditors. Additionally, upon the Debtor's own admission, the Debtor has not filed complete and accurate Schedules and pleadings, therefore depriving creditors and parties in interest of relevant financial information of the Debtor. Weinberger Decl., at ¶ 29.

[ECF No. 52; 17-41813]. As to Gallant, the United States Trustee provided the following justification as to why the appointment of a Chapter 11 Trustee was in the best interest of creditors and the Bankruptcy Estate:

Here, the Debtor has represented that it is not operating and is not generating any revenue. Weinberger Decl., at ¶ 24. At the hearing on May 10, 2017, the Debtor indicated that Gallant does not intend to restart operations in the near future, and the Debtor will use existing funds to pay expenses, including any costs generated by Avenica. Weinberger Decl., at ¶ 31. Accordingly, the interests of creditors and the estate are best served by the appointment of a chapter 11 trustee who can evaluate the Debtor's operations and, if possible, take the steps required to bring funds into the estate to pay creditors. Additionally, upon the Debtor's own admission, the Debtor has not filed complete and accurate Schedules and pleadings, therefore depriving creditors and parties in interest of relevant financial information of the Debtor. Weinberger Decl., at ¶ 29.

[ECF No. 36-1, 17-41814].

*c. Appointment of a Trustee and Subsequent Actions Taken as to assets and disbursements of Gallant and Avenica*

On May 25, 2017, the Court entered an Order Approving the Appointment of a Chapter 11 Trustee, and subsequently on May 30, 2017, the Trustee was appointed as trustee in the Chapter 11 Cases. [ECF No. 67, 17-41813; ECF No. 55, 17-41814]. Upon her appointment, the Trustee retained (a) Porzio, Bromberg & Newman, P.C. as special counsel to the-Trustee, (b) Lamonica Herbst & Maniscalco, LLP as counsel to the Trustee, and (c) CBIZ Accounting, Tax and Advisory of New York, LLC and CBIZ National Tax Office, LLC as financial advisors to the Trustee. [ECF Nos. 84, 85, 86; 17-41813; ECF No. 71, 72, 73; 17-41814].

Upon being appointed, the Trustee began engaging in the liquidation of the Debtors' assets. The Trustee received an initial transfer of funds from Gallant in the amount of $602,970.65.

During the Trustee's administration of the Estate, the Trustee discovered certain transfers, potential breaches, and incorrect reconciliations with respect to GCM Prime, Ltd., Prime Trading Holdings, Corp., and Mr. Buccellato (collectively, the "GCM Prime Parties"). The GCM Prime Parties asserted defenses to any litigation. Rather than engage in a protracted litigation, the Trustee, after months of settlement negotiations with the GCM Prime Parties, entered into a settlement. The GCM Prime Parties agreed to pay $715,000 in full satisfaction of any claims that the Trustee or

the Estate have, or may have had, against it. Furthermore, GCM Prime Ltd. also paid the Trustee $23,090.91 in connection with certain post-petition service charges incurred to Gallant through the date of rejection of an executory contract between the parties. Later, the Trustee also recovered an additional $6,375 from GCM Prime Ltd in connection with a receivable.

Through the Trustee's investigation into Gallant's assets, the Trustee also uncovered that CFH was holding $100,000 of Gallant's funds. A demand letter for return of the $100,000 was sent to CFH and CFH subsequently sent the Trustee $100,000 in response to the demand letter. Similarly, the Trustee discovered that Majestic Capital Group, S.A. ("Majestic") was holding funds that belonged to Gallant. In response to a demand letter, Majestic closed Gallant's accounts and sent the remaining funds to the Trustee in the amount of $26,477.67. Additionally, the Trustee learned that Gallant had a liquidity account at SaxoBank. As a result, the Trustee sent SaxoBank a demand letter for turnover of Gallant's funds. In response, SaxoBank turned over to the Trustee $2,499.99.

The Trustee also learned about a potential preference claim against Forest Park FX LLC ("Forest Park"). for commissions received during the 90-day preference period.[7] In response, Forest Park asserted various affirmative defenses. As a result, the Trustee entered into a settlement agreement, which netted $9,500 for the Estate in exchange for a release from the Estate. The Trustee was also able to recover $38,805.42 from WorldPay AP Ltd. in relation to amounts owed to Gallant.

Prior to the Petition Date, Gallant was party to a merchant processing agreement with Allied Wallet, Inc. ("Allied"). As part of the Trustee's investigation, the Trustee uncovered that Allied was holding reserve funds that were the property of Gallant. As a result, the Trustee and Allied entered into a settlement agreement which netted $313,389.24 for the Estate. Gallant also had a merchant processing agreement with Paysafe Merchant Services Limited ("PMSL") and Skrill Ltd. ("Skrill"). Thereafter, Paysafe Financial Services Limited ("PFSL") acquired all the processing agreements to which PFSL was a party. The Trustee's investigation yielded that Skrill and PFSL were holding funds that belonged to Gallant. As a result, the Trustee, Skrill and PFSL entered into a settlement agreement which netted $439,616.44 for the Estate. The Trustee's account for Gallant also accumulated $1,485.28 in interest during the course of Gallant's Chapter 11 case for a total recovery of $2,279,210.60.

During the course of the Trustee's administration of the Estate, the Trustee made necessary and reasonable disbursements in the amount of $930,402.83. As such, as of the filing of the Plan, the Trustee is holding $1,348,807.77 in proceeds from the liquidation of Gallant's assets. A summary of disbursements and receipts is attached hereto as **Exhibit "2"**.

## ARTICLE V
## CONFIRMATION AND VOTING PROCEDURES

**5.1 Confirmation Procedure.** On [●], 2020, the Bankruptcy Court entered the Order Approving the Combined Plan and Disclosure Statement for solicitation purposes only, and authorizing Gallant to solicit votes to accept or reject the Plan. The Confirmation Hearing has

been scheduled for December 1, 2020 at 1:00 p.m. (prevailing Eastern Time) to consider: (a) final approval of the Combined Disclosure Statement and Plan as providing adequate information pursuant to section 1125 of the Bankruptcy Code and (b) confirmation of the Plan pursuant to section 1129 of the Bankruptcy Code.  The Confirmation Hearing may be adjourned from time to time by Gallant without further notice, except for an announcement of the adjourned date made at the Confirmation Hearing or by filing a notice with the Bankruptcy Court.

**5.2 Procedure for Objections.**    Any Objection to final approval of the Combined Disclosure Statement and Plan as providing adequate information pursuant to section 1125 of the Bankruptcy Code and/or confirmation of the Plan must be made in writing and filed with the Bankruptcy Court and served via email on:  (a) (i) counsel for the Chapter 11 Trustee LaMonica Herbst & Maniscalco, LLP, Attn: Gary F. Herbst, Esq., gfh@lhmlawfirm.com, Jacqulyn Somers Loftin, Esq., jsl@lhmlawfirm.com; (ii) special counsel for the Chapter 11 Trustee Porzio, Bromberg & Newman, P.C., Attn: John S. Mairo, Esq., jsmairo@pbnlaw.com, Robert M. Schechter, Esq., rmschechter@pbnlaw.com, David E. Sklar, Esq., desklar@pbnlaw.com; (b) the United States Trustee, Attn: Rachel B. Wolf, Esq., Rachel.Wolf@usdoj.gov; and (c) the Liquidating Trustee Silverman Acampora LLP, Attn: Ronald Friedman, Esq., rfriedman@SilvermanAcampora.com, by no later than November 24, 2020, at 5:00 P:M . (prevailing Eastern Time).  Unless an Objection is timely filed and served, it may not be considered by the Bankruptcy Court at the Confirmation Hearing.

**5.3 Requirements for Confirmation.**  The Bankruptcy Court will confirm the Plan only if it meets all of the applicable requirements of section 1129 of the Bankruptcy Code.  Among other requirements, the Plan: (a) must be accepted by all Impaired Classes of Claims or Interests or, if rejected by an Impaired Class, the Plan must not "discriminate unfairly" against, and be "fair and equitable" with respect to, such Class; and (b) must be feasible.  The Bankruptcy Court must also find that: (i) the Plan has classified Claims and Interests in a permissible manner; (ii) the Plan complies with the technical requirements of chapter 11 of the Bankruptcy Code; and (iii) the Plan has been proposed in good faith.

**5.4 Classification of Claims and Interests.**

Section 1123 of the Bankruptcy Code provides that a plan must classify the claims and interests of a debtor's creditors and equity interest holders. In accordance with section 1123 of the Bankruptcy Code, the Plan divides Claims and Interests into Classes and sets forth the treatment for each Class (other than those claims, which pursuant to section 1123(a)(1) of the Bankruptcy Code, need not be, and have not been, classified). The Trustee is also required, under section 1122 of the Bankruptcy Code, to classify Claims and Interests into Classes that contain Claims or Interests that are substantially similar to the other Claims or Interests in such Class.

The Bankruptcy Code also requires that a plan provide the same treatment for each claim or interest of a particular class unless the claim holder or interest holder agrees to a less favorable treatment of its claim or interest. The Proponent believes that the Plan complies with such standard. If the Bankruptcy Court finds otherwise, however, it could deny confirmation of the Plan if the holders of Claims or Interests affected do not consent to the treatment afforded to them under the Plan.

A Claim or Interest is placed in a particular Class only to the extent that the Claim or Interest falls within the description of that Class and is classified in other Classes to the extent that any portion of the Claim or Interest falls within the description of such other Classes. A Claim also is placed in a particular Class for the purpose of receiving Distributions pursuant to the Plan only to the extent that such Claim is an Allowed Claim in that Class and such Claim has not been paid, released or otherwise settled prior to the Effective Date.

The Proponent believes that the Plan has classified all Claims and Interests in compliance with the provisions of section 1122 of the Bankruptcy Code and applicable case law. It is possible that a holder of a Claim or Interest may challenge the classification of Claims or Interests and that the Bankruptcy Court may find that a different classification is required for the Plan to be confirmed. If this occurs, the Proponent intends, in accordance with the terms of the Plan, to make such modifications to the Plan as may be necessary to permit its confirmation. Any such reclassification could adversely affect holders of Claims by changing the composition of one or more Classes and the vote required of such Class or Classes for approval of the Plan.

EXCEPT AS SET FORTH IN THE PLAN, UNLESS SUCH MODIFICATION OF CLASSIFICATION MATERIALLY ADVERSELY AFFECTS THE TREATMENT OF A HOLDER OF A CLAIM AND REQUIRES RESOLICITATION, ACCEPTANCE OF THE PLAN BY ANY HOLDER OF A CLAIM PURSUANT TO THIS SOLICITATION WILL BE DEEMED TO BE A CONSENT TO THE PLAN'S TREATMENT OF SUCH HOLDER OF A CLAIM REGARDLESS OF THE CLASS AS TO WHICH SUCH HOLDER ULTIMATELY IS DEEMED TO BE A MEMBER.

The amount of any Impaired Claim that ultimately is Allowed by the Bankruptcy Court may vary from any estimated Allowed amount of such Claim and, accordingly, the total Claims that are ultimately Allowed by the Bankruptcy Court with respect to each Impaired Class of Claims may also vary materially from any estimates contained herein with respect to the aggregate Claims in any Impaired Class. Thus, the actual recovery ultimately received by a particular Holder of an Allowed Claim may be adversely or favorably affected by the aggregate amount of Claims Allowed in the applicable Class. Additionally, any changes to any of the assumptions underlying the estimated Allowed amounts could result in material adjustments to recovery estimates provided herein and/or the actual Distribution received by creditors. The projected recoveries are based on information available to the Trustee as of the date hereof and reflect the Trustee's views as of the date hereof only.

The classification of Claims and Interests, and the nature of Distributions to members of each Class, are summarized herein. The Proponent believes that the consideration, if any, provided under the Plan to holders of Claims reflects an appropriate resolution of their Claims taking into account the differing nature and priority (including contractual subordination, if any) of such Claims and Interests. The Bankruptcy Court must find, however, that a number of statutory tests are met before it may confirm the Plan. Many of these tests are designed to protect the interests of holders of Claims or Interests who are not entitled to vote on the Plan, or do not vote to accept the Plan, but who will be bound by the provisions of the Plan if it is confirmed by the Bankruptcy Court.

**5.5 Impaired Claims or Interests.**

Pursuant to section 1126 of the Bankruptcy Code, only classes of claims or interests that are Impaired under a plan may vote to accept or reject such plan. Under section 1124 of the Bankruptcy Code, a claim or interest is Impaired under a plan if the holder's legal, equitable, or contractual rights are changed under such plan. In addition, if the holders of claims or interests in an Impaired Class do not receive or retain any property under a plan on account of such claims or interests, such Impaired Class is deemed to have rejected such plan under section 1126(g) of the Bankruptcy Code and, therefore, such holders are not entitled to vote on such plan.

Under the Plan, holders of Claims in Classes 2 and 3 are Impaired and are entitled to vote on the Plan.  Holders of Claims or Interests in Class 4 are Impaired and will not receive or retain any property under the Plan on account of such Claims or Interests and, therefore, are not entitled to vote on the Plan and deemed to reject the Plan under section 1126(g) of the Bankruptcy Code. Claims in Class 1 are unimpaired.

**5.6 Confirmation Without Necessary Acceptances; Cramdown.**

In the event that any Impaired Class of Claims or Interests does not accept a plan, a debtor nevertheless may move for confirmation of the plan.  A plan may be confirmed, even if it is not accepted by all Impaired Classes, if the plan has been accepted by at least one Impaired Class of claims, and the plan meets the "cramdown" requirements set forth in section 1129(b) of the Bankruptcy Code. Section 1129(b) of the Bankruptcy Code requires that a court find that a plan: (a) "does not discriminate unfairly", and (b) is "fair and equitable," with respect to each non-accepting Impaired Class of Claims or Interests.  Here, because Holders of Claims and Interests in Class 4 are deemed to reject the Plan, the Proponent may seek confirmation of the Plan from the Bankruptcy Court by satisfying the "cramdown" requirements set forth in section 1129(b) of the Bankruptcy Code.

A plan does not "discriminate unfairly" if:  (a) the legal rights of a nonaccepting class are treated in a manner that is consistent with the treatment of other classes whose legal rights are similar to those of the nonaccepting class, and (b) no class receives payments in excess of that which it is legally entitled to receive for its claims or interests. The Proponent believes that, under the Plan, all Impaired Classes of Claims or Interests are treated in a manner that is consistent with the treatment of other Classes of Claims or Interests that are similarly situated, if any, and no Class of Claims or Interests will receive payments or property with an aggregate value greater than the aggregate value of the Allowed Claims or Allowed Interests in such Class. Accordingly, the Proponent believes that the Plan does not discriminate unfairly as to any Impaired Class of Claims or Interests.

The Bankruptcy Code provides a nonexclusive definition of the phrase "fair and equitable." In order to determine whether a plan is "fair and equitable," the Bankruptcy Code establishes "cram down" tests for secured creditors, unsecured creditors and equity holders, as follows:

(a) Secured Creditors. Either: (i) each Impaired secured creditor retains its liens securing its secured claim and receives on account of its secured claim deferred Cash payments having a present value equal to the amount of its allowed secured claim, (ii) each Impaired secured creditor realizes the "indubitable equivalent" of its allowed secured claim, or (iii) the property securing the claim is sold free and clear of Liens with such Liens to attach to the proceeds of the sale and the treatment of such liens on proceeds to be as provided in clause (i) or (ii) above.

(b) Unsecured Creditors. Either: (i) each Impaired unsecured creditor receives or retains under the Plan property of a value equal to the amount of its Allowed Claim, or (ii) the Holders of Claims and Interests that are junior to the Claims of the dissenting class will not receive any property under the Plan.

(c) Equity Interests. Either: (i) each holder of an Interest will receive or retain under the Plan the fixed redemption price to which such Holder is entitled, or the value of the Interest, or (ii) the Holder of an Interest that is junior to the nonaccepting class will not receive or retain any property under the Plan.

As discussed above, the Proponent believes that the Distributions provided under the Plan satisfy the absolute priority rule, where required.

### 5.7 Feasibility.

Section 1129(a)(11) of the Bankruptcy Code requires that confirmation of a plan not be likely to be followed by the liquidation, or the need for further financial reorganization, of Gallant or any successor to Gallant (unless such liquidation or reorganization is proposed in the Plan). Inasmuch as substantially all of Gallant's assets have been liquidated and the Plan provides for the Distribution of all of the Cash proceeds of Gallant's assets to holders of Claims that are Allowed as of the Effective Date in accordance with the Plan, for purposes of this test, the Trustee has analyzed the ability of the Liquidating Trust to meet its obligations under the Plan. Based on the Trustee's analysis, the Liquidating Trust will have sufficient assets to accomplish its tasks under the Plan. Therefore, the Proponent believes that the liquidation pursuant to the Plan will meet the feasibility requirements of the Bankruptcy Code.

### 5.8 Best Interests Test and Liquidation Analysis.

Even if a plan is accepted by the holders of each class of claims and interests, the Bankruptcy Code requires a court to determine that such plan is in the best interests of all holders of claims or interests that are impaired by that plan and that have not accepted the plan. The "best interests" test, as set forth in section 1129(a)(7) of the Bankruptcy Code, requires a court to find either that all members of an impaired class of claims or interests have accepted the plan or that the plan will provide a member who has not accepted the plan with a recovery of property of a value, as of the effective date of the plan, that is not less than the amount that such holder would recover if the debtor were liquidated under chapter 7 of the Bankruptcy Code.

To calculate the probable distribution to holders of each impaired class of claims and interests if a debtor were liquidated under chapter 7, a court must first determine the aggregate

dollar amount that would be generated from a debtor's assets if its chapter 11 case was converted to chapter 7 cases under the Bankruptcy Code.  To determine if a plan is in the best interests of each impaired class, the present value of the distributions from the proceeds of a liquidation of the debtor's unencumbered assets and properties, after subtracting the amounts attributable to the costs, expenses and administrative claims associated with a chapter 7 liquidation, must be compared with the value offered to such impaired classes under the plan.  If the hypothetical liquidation distribution to holders of claims or interests in any Impaired class is greater than the distributions to be received by such parties under the plan, then such plan is not in the best interests of the holders of claims or interests in such Impaired class.

Because the Plan is a liquidating plan, the "liquidation value" in the hypothetical chapter 7 liquidation analysis for purposes of the "best interests" test is substantially similar to the estimates of the results of the chapter 11 liquidation contemplated by the Plan.  However, the Proponent believes that in a chapter 7 liquidation, there would be additional costs and expenses that the Estate would incur as a result of liquidating the Estate in a chapter 7 case.

The additional costs of liquidation under Chapter 7 of the Bankruptcy Code would include the compensation of a trustee, as well as the costs of counsel and other professionals retained by the trustee getting up to speed on what has transpired in Gallant's Chapter 11 Case. The Proponent believes such amount would exceed the amount of expenses that would be incurred in implementing the Plan and winding up the affairs of Gallant.  Conversion also would likely delay the liquidation process and the ultimate Distribution of Gallant's assets.  The Estate would also be obligated to pay all unpaid expenses incurred by Gallant while its case was a chapter 11 bankruptcy case (such as compensation for Professionals) that is allowed in the chapter 7 case.

Accordingly, the Proponent believes that holders of Allowed Claims would receive as much or less than anticipated under the Plan if Gallant's Chapter 11 case was converted to a chapter 7 case, and therefore, the classification and treatment of Claims and Interests in the Plan complies with section 1129(a)(7) of the Bankruptcy Code. Attached hereto as **Exhibit "4"** is a hypothetical chapter 7 liquidation analysis.

### 5.9 Acceptance of the Plan.

The rules and procedures governing eligibility to vote on the Plan, solicitation of votes, and submission of Ballots are set forth in the Interim Approval and Procedures Order.

In order for the Plan to be accepted by an Impaired Class of Claims, a majority in number and two-thirds in dollar amount of the Claims voting in such Class must vote to accept the Plan. At least one voting Class of Claims, excluding the votes of Insiders, must actually vote to accept the Plan.

IF YOU ARE ENTITLED TO VOTE ON THE PLAN, THE TRUSTEE URGES YOU TO COMPLETE, DATE, SIGN, AND PROMPTLY MAIL THE BALLOT YOU RECEIVED TO: LAMONICA HERBST & MANISACALCO, LLP 3305 JERUSALEM AVENUE, SUITE 201, WANTAGH, NEW YORK 11793, ATTN: JACQULYN S. LOFTIN, ESQ.  Please be sure to complete the Ballot properly and legibly and to identify the exact amount of your Claim and the

name of the Holder. If you are a Holder of a Claim entitled to vote on the Plan and you did not receive a Ballot, you received a damaged Ballot, or you lost your Ballot, or if you have any questions concerning the Plan or procedures for voting on the Plan, please contact Gerard D'Amato at CBIZ MHM, LLC via email at gdamato@CBIZ.com with a reference to "Combined Plan and Disclosure Statement" in the subject line; or by phone at 212-790-5820 and request to speak with a member of the solicitation team. Gerard D'Amato is NOT permitted to provide legal advice.

## ARTICLE VI
## CERTAIN RISK FACTORS TO BE CONSIDERED PRIOR TO VOTING

THE PLAN AND ITS IMPLEMENTATION ARE SUBJECT TO CERTAIN RISKS, INCLUDING, BUT NOT LIMITED TO, THE RISK FACTORS SET FORTH BELOW. HOLDERS OF CLAIMS WHO ARE ENTITLED TO VOTE ON THE PLAN SHOULD READ AND CAREFULLY CONSIDER THE RISK FACTORS, AS WELL AS THE OTHER INFORMATION SET FORTH IN THE PLAN AND ASSOCIATED DOCUMENTS BEFORE DECIDING WHETHER TO VOTE TO ACCEPT OR REJECT THE PLAN. THESE FACTORS SHOULD NOT, HOWEVER, BE REGARDED AS CONSTITUTING THE ONLY RISKS INVOLVED IN CONNECTION WITH THE PLAN AND ITS IMPLEMENTATION.

### 6.1 The Plan May Not Be Accepted.

The Trustee can make no assurances that the requisite acceptances to the Plan will be received, and the Trustee may need to obtain acceptances to an alternative plan of liquidation for Gallant that may not have the support of the creditors and/or may be required to liquidate the Estate under chapter 7 of the Bankruptcy Code. There can be no assurance that the terms of any such alternative restructuring arrangement or plan would be similar to, or as favorable to, creditors as those proposed in the Plan.

### 6.2 The Plan May Not Be Confirmed.

Even if the Trustee receives the requisite acceptances, there is no assurance that the Bankruptcy Court will confirm the Plan. Even if the Bankruptcy Court determined that the Combined Disclosure Statement and Plan and the balloting procedures and results were appropriate, the Bankruptcy Court could still decline to confirm the Plan if it finds that any of the statutory requirements for confirmation had not been met. Moreover, there can be no assurance that modifications to the Combined Disclosure Statement and Plan will not be required for confirmation or that such modifications would not necessitate the resolicitation of votes. If the Plan is not confirmed, it is unclear what Distributions holders of Claims or Interests ultimately would receive with respect to their Claims or Interests in a subsequent plan of liquidation.

### 6.3 Distributions to Holders of Allowed Claims Under the Plan May Be Inconsistent with Projections.

Projected Distributions are based upon good faith estimates of the total amount of Claims ultimately Allowed and the funds available for Distribution. There can be no assurance that the estimated Claim amounts set forth in the Plan are correct. These estimated amounts are based on

certain assumptions with respect to a variety of factors. Both the actual amount of Allowed Claims in a particular Class, and the funds available for Distribution to such Class, may materially differ from the Trustee's estimates.  If the total amount of Allowed Claims in a Class is higher than the Trustee's estimates, or the funds available for Distribution to such Class are lower than the Trustee's estimates, the percentage recovery to holders of Allowed Claims in such Class will be less than projected.

### 6.4 Objections to Classification of Claims.

Section 1122 of the Bankruptcy Code requires that the Plan classify Claims and Interests. The Bankruptcy Code also provides that the Plan may place a Claim or Interest in a particular Class only if such Claim or Interest is substantially similar to the other Claims or Interests of such Class. The Trustee believes that all Claims and Interests have been appropriately classified in the Plan. To the extent that the Bankruptcy Court finds that a different classification is required for the Plan to be confirmed, the Trustee would seek to:  (i) modify the Plan to provide for whatever classification might be required for Confirmation, and (ii) use the acceptances received from any holder of Claims pursuant to this solicitation for the purpose of obtaining the approval of the Class or Classes of which such Holder ultimately is deemed to be a member.  Any such reclassification of Claims, although subject to the notice and hearing requirements of the Bankruptcy Code, could adversely affect the Class in which such holder was initially a member, or any other Class under the Plan, by changing the composition of such Class and the vote required for approval of the Plan. There can be no assurance that the Bankruptcy Court, after finding that a classification was inappropriate and requiring a reclassification, would approve the Plan based upon such reclassification.  Except to the extent that modification of the classification scheme in the Plan requires resolicitation, the Trustee will, in accordance with the Bankruptcy Code and the Bankruptcy Rules, seek a determination by the Bankruptcy Court that acceptance of the Plan by any holder of Claims pursuant to this solicitation will constitute a consent to the Plan's treatment of such holder, regardless of the Class that such holder is ultimately deemed to be a member. The Proponent believes that they would be required to resolicit votes for or against the Plan only when a modification adversely affects the treatment of the Claim or Interest of any holder.

The Bankruptcy Code also requires that the Plan provide the same treatment for each Claim or Interest of a particular Class unless the holder of a particular Claim or Interest agrees to a less favorable treatment of its Claim or Interest. The Proponent believes that the Plan complies with the requirement of equal treatment. To the extent that the Bankruptcy Court finds that the Plan does not satisfy such requirement, the Bankruptcy Court could deny confirmation of the Plan. Issues or disputes relating to classification, and/or treatment, could result in a delay in the confirmation and consummation of the Plan, and could increase the risk that the Plan will not be consummated.

### 6.5 Failure to Consummate the Plan.

The Plan provides for certain conditions that must be satisfied (or waived) prior to Confirmation, and for certain other conditions that must be satisfied (or waived) prior to the Effective Date. As of the date of the Plan, there can be no assurance that any, or all, of the conditions in the Plan will be satisfied (or waived). Accordingly, there can be no assurance that

the Plan will be confirmed by the Bankruptcy Court. Further, if the Plan is confirmed, there can be no assurance that the Plan will be consummated.

**6.6 Allowance of Claims May Substantially Dilute the Recovery to Holders of Claims under the Plan.**

There can be no assurance that the estimated Claim amounts set forth in the Plan are correct, and the actual allowed amounts of Claims may materially differ from the estimates. The estimated amounts are based on certain assumptions with respect to a variety of factors. Should these underlying assumptions prove incorrect, the actual Allowed amounts of Claims may vary from those estimated herein.

**6.7 Certain Tax Considerations.**

There are a number of material income tax considerations, risks and uncertainties associated with the Plan described in this Combined Disclosure Statement and Plan.

THE U.S. FEDERAL INCOME TAX CONSEQUENCES OF THE PLAN ARE COMPLEX. NOTHING HEREIN SHALL CONSTITUTE TAX ADVICE.  THE TAX CONSEQUENCES ARE IN MANY CASES UNCERTAIN AND MAY VARY DEPENDING ON A HOLDER'S PARTICULAR CIRCUMSTANCES.  ACCORDINGLY, HOLDERS ARE URGED TO CONSULT THEIR TAX ADVISORS ABOUT THE UNITED STATES FEDERAL, STATE AND LOCAL, AND APPLICABLE FOREIGN INCOME AND OTHER TAX CONSEQUENCES OF THE PLAN.

**ARTICLE VII**
**MEANS OF IMPLEMENTING THE PLAN**

In addition to the provisions set forth elsewhere in this Plan, the following shall constitute the means of execution and implementation of this Plan.

**7.1    Corporate Action.**

(a)    **Vesting of the Liquidating Trust Assets**. Immediately following the occurrence of the Effective Date, (a) the Trustee shall be released of her duties as Trustee of Gallant, (b) the Liquidating Trust Assets[8] shall be transferred to the Liquidating Trust in accordance with this Plan. The Liquidating Trust Assets shall vest in the Liquidating Trust free and clear of all Liens, claims, and interests. Subject to the limitations set forth in the Liquidating Trust Agreement, on and after the Effective Date, the Liquidating Trustee shall have sole authority and responsibility for investigating, analyzing, compromising, collecting, liquidating, and otherwise administrating all Liquidating Trust Assets.

---

[8] Liquidating Trust Assets shall have the meaning ascribed to it in Section 7.2(c) of this Plan. Capitalized terms used in this Article VII that are not otherwise defined herein shall have the meanings ascribed to such terms in the Liquidating Trust Agreement, to be filed with the Court in advance of the hearing on the Combined Disclosure Statement and Plan; provided, however, that any inconsistency between the terms of the Plan as set forth herein and the Liquidating Trust Agreement, the terms of this Plan shall control.

Upon transfer of the Liquidating Trust Assets, the Trustee shall have no further duties or responsibilities in connection with the implementation of this Plan.

(b)      **Corporate Existence of Gallant**. After the Effective Date, Gallant shall continue to exist for Plan Distribution purposes. At any time after the Effective Date, the Liquidating Trustee shall be authorized, subject to the terms of the Liquidating Trust Agreement, to dissolve Gallant upon filing a notice of such dissolution with the Bankruptcy Court, notwithstanding any requirements of applicable state law, without the necessity for any other or further actions to be taken by or on behalf of Gallant, or payments to be made in connection therewith.

Upon the Effective Date, the Liquidating Trustee shall retain and store all of the books, records and files, including, but not limited to, the electronic books and records, currently being held by the Trustee on behalf of the Estate, and files that shall have been delivered to the Liquidating Trust until such time as all such books, records and files, including, but not limited to, the electronic books and records, are no longer required to be retained under applicable law, and file a certificate informing the Bankruptcy Court of the location at which such books, records, and files are being stored.

On the Effective Date, and without further order of the Bankruptcy Court, the Trustee or the Liquidating Trustee, on behalf of Gallant, may execute and file documents and take all other actions as they deem appropriate relating to the foregoing corporate actions under applicable state laws and, in such event, all applicable regulatory or governmental agencies shall take all steps necessary to allow and effect any necessary corporate changes of Gallant as provided herein, without the payment of any fee, tax or charge and without the need for the filing of reports or certificates.

**7.2 Liquidating Trust.**

(a) **Establishment of the Liquidating Trust.** On the Effective Date, all assets of the Estate not otherwise distributed in accordance with the Plan shall vest with the Liquidating Trust to be governed by the Liquidating Trust Agreement and the terms set forth below.

(b) **Purpose of Liquidating Trust.** Among other functions, the Liquidating Trust shall: (i) serve as the vehicle to investigate, prosecute, and/or settle (in its discretion) Gallant's remaining Causes of Action belonging to its Estate, and (ii) object to (in its discretion) and administer Claims and make Distributions on account of Allowed Claims according to the terms of the Liquidating Trust Agreement and this Plan.

(c) **Liquidating Trust Assets.** On the Effective Date, Gallant's assets shall be subject to Distribution in accordance with the Liquidating Trust Agreement. The Liquidating Trust shall be vested with $250,000, as set forth in Section 3.3 of the Plan, all the remaining Causes of Action and any other remaining unliquidated assets of Gallant to distribute to the Holders of Allowed Claims in accordance with the terms of the Plan and the Liquidating Trust Agreement.

(d) **Structure of Trust and Distributions.** Following the funding of the Liquidating Trust in accordance with this Plan, the Liquidating Trustee shall liquidate the Liquidating Trust Assets and distribute the net proceeds of such liquidation in accordance with the Plan and the Liquidating Trust Agreement. The Liquidating Trust shall be structured in a manner that provides for a Tranche A and a Tranche B of beneficial interests in the Liquidating Trust.

(i) *Tranche A Liquidating Trust Interests*. Beneficiaries of Tranche A Liquidating Trust Interests will be all the Holders of Allowed Class 2 Claims under this Plan. The holders of Tranche A Liquidation Trust Interests shall be paid on a pro-rata basis until all claims of Holders of Tranche A Liquidating Trust Interests have been satisfied in full in accordance with the treatment of Class 2 Claims under this Plan.

(ii) *Tranche B Liquidating Trust Interests*. Beneficiaries of Tranche B Liquidating Trust Interests will be all the Holders of Allowed Class 3 Claims under this Plan. The holders of Tranche B Liquidation Trust Interests shall receive any Distribution unless, and until, the claims which form the basis of Tranche A Liquidation Trust Interests have been satisfied in full. Upon satisfaction in full of the Claims which form the basis of Tranche A Liquidation Trust Interests, the holders of Tranche B Liquidation Trust Interests shall be paid on a pro-rata basis until all claims of Holders of Tranche B Liquidation Trust Interests have been satisfied in full in accordance with the treatment of Class 3 Claims.

(e) **Duration of the Trust.** The Liquidating Trust shall have an initial term of (5) years; *provided, however* that, if warranted by the facts and circumstances an extension of the term of the Liquidating Trust is necessary to accomplish the purposes of the Liquidating Trust, then the Liquidating Trustee shall be authorized to extend the Liquidating Trust for up to two (2) additional terms of one year upon filing a motion within six months prior to the expiration of the term of the Liquidating Trust. The Liquidating Trust may be terminated earlier than its scheduled termination if the Liquidating Trust has administered all of the Liquidating Trust Assets and performed all other duties required by this Plan and the Liquidating Trust Agreement. As soon as practicable after the final Distribution Date, the Liquidating Trustee shall seek entry of a Final Order closing Gallant's Chapter 11 case pursuant to section 350(a) of the Bankruptcy Code.

(f) **Retained Actions; Initial Investigation.** Subject to the limitations set forth in the Liquidating Trust Agreement, on and after the Effective Date, the Liquidating Trustee shall have sole authority and responsibility for investigation, analyzing, commencing, prosecuting, litigating, compromising, collecting, and otherwise administering all of the remaining Causes of Action.

On the Effective Date, or as soon as practicable thereafter, the Liquidating Trustee shall obtain a tax identification number for the Liquidating Trust and engage professionals as may be necessary or appropriate for the purpose of investigating the nature, scope and merit of all pending litigations.

### 7.3 Liquidating Trustee

(a) **Appointment.** The appointment of the Liquidating Trustee shall be effective as of the Effective Date. Successor Liquidating Trustee(s) shall be appointed as set forth in the Liquidating Trust Agreement.

(b) **Term.** The Liquidating Trustee's term, including the term of any Successor Liquidating Trustee(s), shall expire upon termination of the Liquidating Trust pursuant to this Plan and/or the Liquidating Trust Agreement.

(c) **Powers and Duties.** The Liquidating Trustee shall be the exclusive representative of the Estate and shall have the rights and powers set forth in the Plan and Liquidating Trust Agreement including, but not limited to, the rights and powers of a trustee under the Bankruptcy Code. The Liquidating Trustee shall be governed in all things by the terms of the Liquidating Trust Agreement and this Plan. The Liquidating Trustee shall administer the Liquidating Trust and the Liquidating Trust Assets and make distributions from the Net Proceeds of the Liquidating Trust, in accordance with this Plan and the Liquidating Trust Agreement. In addition, the Liquidating Trustee shall, in accordance with the terms of this Plan, take all actions necessary to wind down the affairs of Gallant consistent with this Plan and applicable non-bankruptcy law. Subject to the terms of the Liquidating Trust Agreement, the Liquidating Trustee shall be authorized, empowered, and directed to take all actions necessary to comply with this Plan and exercise and fulfill the duties and obligations arising in connections with the administration of the Liquidating Trust.

**7.4 Fees and Expenses.** Except as otherwise provided in this Plan, compensation of the Liquidating Trustee, and the actual costs and expenses of the Liquidating Trustee and the Liquidating Trust (including, without limitation, the actual fees and expenses of the Liquidating Trustee Professionals) shall be paid from the Liquidating Trust in accordance with the terms of the Liquidating Trust Agreement. The Liquidating Trustee shall pay the actual reasonable fees and expenses of the Professionals retained by the Liquidating Trustee, as necessary to discharge the Liquidating Trustee's duties under this Plan and the Liquidating Trust Agreement. Payments to the Liquidating Trustee shall not require notice to any party, or an order of the Bankruptcy Court approving such payments.

**7.5 Tax Treatment of Holders of Liquidating Trust Interests.** Gallant and the Liquidating Trustee shall treat the Liquidating Trust Beneficiaries as grantors of the Liquidating Trust, and the Liquidating Trustee will file tax returns for the Liquidating Trust as a "grantor trust" pursuant to section 1.671-4(a) of the U.S. Treasury Regulations. Items of income, gain, loss, expense, and other tax items will be allocated to the Liquidating Trust Beneficiaries that would be entitled to receive such items if they constituted cash Distributions or reductions therefrom, and such beneficiaries shall be responsible for the payment of taxes on a current basis that result from such allocations.

For all U.S. federal income tax purposes, all parties generally will be required to treat the transfer of assets to the Liquidating Trust as: (i) a transfer of assets to the Liquidating Trust Beneficiaries followed by (ii) a deemed transfer of the Liquidating Trust Assets, by the Liquidating

Trust Beneficiaries to the Liquidating Trust, with such beneficiaries being treated as the grantors and owners of the Liquidating Trust. Each Holder that is a beneficiary of the Liquidating Trust will generally recognize gain (or loss) in its taxable year that includes the Effective Date in an amount equal to the difference between the amount realized in respect of its Claim and its adjusted tax basis in such Claim. The amount realized for this purpose should generally equal the fair market value of the assets deemed received for U.S. federal income tax purposes under the Plan in respect of such Holder's Claim. A Holder that is deemed to receive for U.S. federal income tax purposes assets distributed under the Plan in respect of its Claim should generally have a tax basis in such Assets in an amount equal to the fair market value of such assets on the date of receipt.

**7.6 Nature of Liquidating Trust Interests.** The Tranche A Liquidating Trust Interests and Tranche B Liquidating Trust Interests issued pursuant to the Plan shall be in the nature of equity interests, and not in the nature of notes, bonds, debentures or evidence of indebtedness. As such, all of the Tranche A Liquidating Trust Interests and Tranche B Liquidating Trust Interests shall be junior in right of payment to all liabilities and obligations of the Liquidating Trust and payments with respect to the Tranche A Liquidating Trust Interests and Tranche B Liquidating Trust Interests shall be contingent upon recoveries of Net Proceeds from the Liquidating Trust Assets.

The Liquidating Trust Beneficiaries shall have beneficial interests in the Liquidating Trust as provided herein. The Liquidating Trust Beneficiaries' proportionate interests in the Liquidating Trust Assets, as thus determined, shall not be transferable, except upon the death of the Liquidating Trust beneficiary or by operation of law. The ownership of Tranche A Liquidating Trust Interests and Tranche B Liquidating Trust Interests shall not entitle a holder of any Tranche A Liquidating Trust Interests and Tranche B Liquidating Trust Interests to any title in. or to, the Liquidating Trust's assets (title to which shall be vested solely in the Liquidating Trustee) or to any right to call for a partition or division of the Liquidating Trust's assets or to require an accounting.

**7.7 No Revesting of Assets.** The Liquidating Trust's assets shall not be vested in Gallant on or following the Effective Date, but shall instead be vested in the Liquidating Trust, and continue to be subject to the jurisdiction of the Bankruptcy Court following confirmation of this Plan until such property is distributed to Holders of Allowed Claims or abandoned in accordance with the provisions of this Plan, the Liquidating Trust Agreement and the Confirmation Order.

**7.8 Exemption from Certain Transfer Taxes.** Pursuant to Bankruptcy Code section 1146(a), any transfers from the Trustee to the Liquidating Trust, or by Gallant to any other Entity pursuant to this Plan, shall not be subject to any stamp tax or similar tax, and the Confirmation Order shall direct the appropriate state or local governmental officials or agents to forgo the collection of any such tax or governmental assessment and to accept for filing and recordation any applicable instruments or documents without the payment of any such tax or governmental assessment.

**7.9 Preservation of Remaining Causes Actions.** Unless one of the remaining Causes of Action against any Entity is expressly waived, relinquished, released, compromised or settled in the Plan or any Final Order, Gallant and its Estates expressly reserve all other remaining Causes of Action to be vested in the Liquidating Trust for possible prosecution by the Liquidating Trustee,

and, therefore, no preclusion doctrine, including the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, waiver, estoppel (judicial, equitable or otherwise) or laches shall apply to any of the remaining Causes of Action upon, or after, the entry of the Confirmation Order or Effective Date based on the Plan or the Confirmation Order, except where such Cause of Action has been expressly released in the Plan or any Final Order. In accordance with section 1123(b) of the Bankruptcy Code, the Liquidating Trust may enforce all rights to commence and pursue, as appropriate, any and all Causes of Action, whether arising prior to or after the Petition Date, and the Liquidating Trust's rights to commence, prosecute, or settle any such remaining Causes of Action shall be preserved notwithstanding entry of the Confirmation Order or the occurrence of the Effective Date.

The failure of the Trustee to list a Claim, right, Cause of Action, suit or proceeding shall not constitute a waiver or release by the Estate of such claim, right, Cause of Action, suit, or proceeding. No Entity may rely on the absence of a specific reference in the Plan or the Disclosure Statement to any remaining Causes of Action against them as any indication that the Liquidating Trustee will not pursue any and all available remaining Causes of Action against them. In accordance with section 1123(b)(3) of the Bankruptcy Code, any remaining Causes of Action that Gallant may hold against any Entity shall vest in the Liquidating Trust and the Liquidating Trustee on behalf of the Liquidating Trust. In addition, the Liquidating Trust reserves the right to pursue or adopt any claims alleged in any lawsuit in which Gallant is a defendant or an interested party, against any Entity, including the plaintiffs or co-defendants in such lawsuits.

**7.10 Release of Liens.**  Except as otherwise provided in this Plan, the Confirmation Order, or in any document, instrument, or other agreement created in connection with this Plan, on the Effective Date, all mortgages, deeds of trust, Liens, or other security interests against the property of the Estate shall be released. The Liquidating Trust shall have the authority to file Lien releases in connection with the foregoing.

**7.11 Setoffs.**  Except for Claims expressly allowed hereunder, on or after the Effective Date, the Liquidating Trust, may, pursuant to applicable law (including Bankruptcy Code section 553), offset against any Claim, including an Administrative Claim, before any Distribution is made on account of such Claim, any and all of the Claims, rights and Causes of Action of any nature that Gallant or the Liquidating Trust, as applicable, may hold against the Holder of such Claim.

**7.12 Withdrawal of Plan.**  The Trustee reserves the right to revoke and withdraw or modify this Plan at any time prior to the Confirmation Date in the exercise of her fiduciary duties or, if the Trustee is for any reason unable to consummate this Plan after the Confirmation Date, at any time up to the Effective Date.  If the Trustee revokes or withdraws this Plan,:  (a) nothing contained in this Plan shall be deemed to constitute a waiver or release of any claims by or against Gallant or to prejudice in any manner the rights of the Trustee or any Entity in any further proceeding involving Gallant, and (b) the result shall be the same as if the Confirmation Order were not entered, this Plan was not filed, and the Effective Date did not occur.

**7.13 Settlement Among Trustee and Class 2 Claim Holders.** This Plan shall constitute a settlement under Bankruptcy Rule 9019 and section 1123 of the Bankruptcy Code between the Class 2 Claim Holders and the Trustee in complete and final resolution of all claims such Class 2

Claim Holders may have against Gallant and the Exculpated Parties. The Class 2 Claim Holders have alleged certain priority rights to Gallant's assets and funds held by the Trustee, which have been disputed by the Trustee. In complete resolution of the claims of Class 2 Claim Holders, the Trustee shall vest a priority fund of $250,000, the Causes of Action, and any other assets of the Estate with the Liquidating Trust to be liquidated, to the extent necessary, and distributed in accordance with the Plan and the Liquidating Trust Agreement. These claims posed a significant risk to the Trustee's ability to distribute assets in accordance with this Plan since the Class 2 Claim Holders asserted a priority interest in all funds held by the Trustee. The Trustee disputes that the Class 2 Claim Holders' claim to a priority interest is valid or has any merit, and the Trustee would contest such claim in litigation, however, the Trustee seeks to avoid further litigation and diminution of the Estate's minimal assets that would occur with having to fund further litigation. The 9019 Settlement resolves the claims of the Class 2 Claim Holders.

## ARTICLE VIII
## EFFECT OF PLAN ON CLAIMS AND INTERESTS

**8.1 Binding Effect.**  This Plan shall be binding upon, and inure to the benefit of, Gallant, all present and former Holders of Claims and Interests, and their respective successors and assigns, including, but not limited to, the Trustee, the Liquidating Trust, and the Liquidating Trustee.

**8.2 Compromise and Settlement.**  Notwithstanding anything contained in this Plan to the contrary, the allowance, classification, and treatment of all Allowed Claims and their respective Distributions and treatments under this Plan take into account and conform to the relative priority and rights of the Claims and the Interests in each Class.  Notwithstanding anything contained in this Plan or the Confirmation Order except otherwise expressly stated herein, no pending litigation is being settled, compromised, released, or otherwise affected by this Plan. The Trustee, through counsel, is in the process of the settling the adversary proceeding against Scope Market Ltd.

**8.3 No Discharge of Gallant.** Pursuant to section 1141(d)(3) of the Bankruptcy Code, confirmation of the Plan will not discharge Claims against Gallant; *provided, however*, that no Holder of any Claim or Interest may, on account of such Claim or Interest, seek or receive any payment or other Distribution from, or seek recourse against, the Estate, the Trustee, the Liquidating Trust, and/or their respective successors, assigns and/or property, except as expressly provided in this Plan.

**8.4 Injunction.** (a) The Confirmation Order shall provide, among other things, that all Entities who have held, hold or may hold Claims against, or Interests in, Gallant are, with respect to any such Claims or Interests, permanently enjoined from and after the Effective Date from taking any of the following actions (other than actions to enforce any rights or obligations under this Plan): (i) commencing, conducting or continuing in any manner, directly or indirectly, any suit, action or other proceeding of any kind (including any proceeding in a judicial, arbitral, administrative or other forum) against Gallant or its respective properties, or the Liquidating Trust and Liquidating Trustee; (ii) enforcing, levying, attaching (including any prejudgment attachment), collecting or otherwise recovering by any manner or means, whether directly or indirectly, any judgment, award, decree or order against Gallant or the Liquidating Trust, or their respective property, or against the Liquidating Trustee; (iii) creating, perfecting or otherwise

enforcing in any manner, directly or indirectly, any encumbrance of any kind against Gallant, the Liquidating Trustee, or any of their respective property, or against the Liquidating Trustee; (iv) asserting any right of setoff, directly or indirectly, against any obligation due Gallant or its respective property, or the Liquidating Trust, except as contemplated or allowed by this Plan; (v) acting or proceeding in any manner, in any place whatsoever, that does not conform to or comply with the provisions of this Plan; and (vi) prosecuting or otherwise asserting any right, ⇒Claim or Cause of Action released pursuant to this Plan, including, without limitation, any right, ⇒Claim or Cause of Action against an Exculpated Party that has been exculpated pursuant to Section 8.5 of this Plan; *provided, however*, that the injunction provided in this Section shall neither bar any Entity from asserting any defense in an action commenced by, or on behalf of, Gallant, nor prohibit any Entity from asserting any right expressly preserved or contemplated by this Plan. The injunction provided for in this Section shall be limited in all respects to the breadth of the exculpations granted in this Plan.

(b) By accepting Distributions pursuant to this Plan, each Holder of an Allowed Claim will be deemed to have specifically consented to the Injunctions set forth in this Section.

**8.5 Exculpation.** Effective as of the Effective Date, the Exculpated Parties shall neither have nor incur any liability to any Entity for any claims or Causes of Action arising prior to, or on the Effective Date, for any act taken or omitted to be taken in connection with, or related to, the administration of the Chapter 11 Cases, or formulating, negotiating, preparing, disseminating, implementing, administering, confirming or effecting the confirmation or consummation of the Plan, or any contract, instrument, release or other agreement or document created or entered into in connection with the Plan, or any other post-petition act taken or omitted to be taken in connection with the Chapter 11 Cases, the Plan, or confirmation or consummation of the Plan; *provided, however*, that the foregoing provisions of this exculpation shall not operate to waive, release or otherwise impair: (i) the remaining pending Causes of Action belonging to the Estate expressly set forth in and preserved by the Plan or the Plan Supplement; (ii) any Causes of Action arising from criminal acts, willful misconduct, actual fraud, or gross negligence of such applicable Exculpated Party as determined by Final Order of the Bankruptcy Court or any other court of competent jurisdiction; (iii) any of the indebtedness or obligations incurred under the Plan and the contracts, instruments, releases, indentures, and other agreements and documents delivered under, or in connection with, the Plan or assumed under the Plan or assumed under Final Order of the Bankruptcy Court; (iv) the rights of any Entity to enforce the Plan and the contracts, instruments, releases, indentures, and other agreements or documents delivered under, or in connection with, the Plan or assumed under Final Order of the Bankruptcy Court; and/or (v) any Objections with respect to any Fee Claims in the Chapter 11 Cases; *provided, further*, that each Exculpated Party shall be entitled to rely upon the advice of counsel concerning its respective duties under, or in connection with, the above-referenced documents, actions or inactions. The relief provided to the Exculpation Parties in this section shall be binding on any and all successor representatives of Gallant, the Estate, and/or the Trustee including but not limited to the Liquidating Trustee.

The foregoing exculpation shall be effective as of the Effective Date without further notice to, or order of, the Bankruptcy Court, act or action under applicable law, regulation, order, or rule or the vote, consent, authorization, or approval of any Person.

**8.6 Terms of Injunctions or Stays.**  Unless otherwise provided in this Plan, all injunctions or stays provided for in the Bankruptcy Case pursuant to sections 105 or 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the Chapter 11 Cases are closed.

## ARTICLE IX
## EXECUTORY CONTRACTS AND UNEXPIRED LEASES

**9.1 Rejection of Executory Contracts and Unexpired Leases.**  Except as otherwise provided in the Confirmation Order, this Plan, any of the Plan Documents, the Bar Date Order, or any other relevant order of the Bankruptcy Court, the Confirmation Order shall constitute an order under section 365 of the Bankruptcy Code rejecting all prepetition Executory Contracts to which any Debtor is a party, to the extent such contracts or leases are Executory Contracts, on and subject to the occurrence of the Effective Date, unless such contract or lease:  (a) is expressly assumed hereunder or previously shall have been assumed or assumed and assigned by Gallant, or (b) is the subject of a pending motion to assume or reject on the Confirmation Date; *provided, however*, that as to all policies and agreements giving rise to insurance in favor of Gallant or its Estate, to the extent there are any, Gallant believes that the insurance agreements of Gallant are not Executory Contracts and therefore are not subject to assumption or rejection. To the extent that an insurance policy or agreement is determined to be an Executory Contract subject to assumption by Gallant, such executory insurance policy or agreement, as the case may be, is hereby assumed and assigned to, and shall vest with, the Liquidating Trust. For the avoidance of doubt, all insurance policies and agreements of Gallant, and all obligations of any of Gallant and the other counterparties thereto, shall be unaffected by the Plan and shall remain enforceable according to their terms and applicable law.

**9.2 Supplemental Bar Date for Rejection Damages.**  If the rejection of any Executory Contract under this Plan gives rise to a Claim by the non-Debtor party or parties to such Executory Contract, such Claim, to the extent that it is timely filed and is an Allowed Claim, shall be classified in Class 3; *provided, however*, that any potential General Unsecured Claim arising from such rejection shall be forever barred and shall not be enforceable against Gallant, the Liquidating Trust, and the Trustee, or their successors or properties, unless a proof of such Claim is filed and served on the Trustee or Liquidating Trust/Liquidating Trustee, as applicable, within thirty (30) days after the date of notice of the entry of the order of the Bankruptcy Court rejecting the Executory Contract (which may include the Confirmation Order).

## ARTICLE X
## DISTRIBUTIONS

**10.1 No Distributions on Disputed Claims.** No Distribution shall be made by the Liquidating Trust with respect to a Disputed Claim until the same, or some portion thereof, becomes an Allowed Claim.

**10.2 Distributions on Claims Allowed After the Effective Date.**  Payments and Distributions from the Trustee and/or Liquidating Trust to each respective Holder on account of a Disputed Claim, to the extent that such Disputed Claim ultimately becomes an Allowed Claim,

shall be made in accordance with provisions of this Plan and the Liquidating Trust Agreement that govern Distributions to such Holders of Allowed Claims. Except as otherwise provided in this Plan, within ninety (90) days after such Disputed Claim becomes an Allowed Claim, the Liquidating Trust shall distribute to such Holder any property that such Holder would have been entitled to receive on the dates Distributions were previously made to Holders of Allowed Claims if such Disputed Claim had been an Allowed Claim on such dates.

All Distributions made under this Section on account of an Allowed Claim will be as if such Disputed Claim had been an Allowed Claim on the dates Distributions were previously made to Holders of Allowed Claims included in the applicable Class.

**10.3 Objections to and Estimation of Claims.** Unless otherwise provided in this Plan, from the Effective Date through the Claims Objection Deadline, the Liquidating Trust/Liquidating Trustee shall have sole and exclusive standing to object to Claims in order to have the Bankruptcy Court determine the amount and treatment of any Claim. Subject to the terms of the Liquidating Trust Agreement, from and after the Effective Date, the Liquidating Trust/Liquidating Trustee may settle or compromise any Disputed Claim without approval of the Bankruptcy Court. Except as otherwise provided in this Plan, if a party files a Proof of Claim and (i) the Trustee, or the Liquidating Trust, as applicable, file an objection to that Claim or otherwise formally challenge the Claim or (ii) the Claim otherwise is a Disputed Claim under this Plan, then such Claim shall be Disputed unless Allowed or Disallowed by a Final Order or as otherwise set forth in this Plan. Except as otherwise provided in this Plan, all proofs of claim filed after the Effective Date shall be Disallowed and forever barred, estopped, and enjoined from assertion, and shall not be enforceable against Gallant, the Estate, the Trustee, the Liquidating Trust, or the Liquidating Trustee, without the need for any objection by the Liquidating Trust/Liquidating Trustee or any further notice to or action, order, or approval of the Bankruptcy Court.

Except as set forth in this Plan with respect to Administrative Claims, all objections to Claims must be filed and served on the Holders of such Claims by the applicable Claims Objection Deadline, as the same may be extended by the Bankruptcy Court. If an objection has not been filed to a proof of claim or the Schedules have not been amended with respect to a Claim that (i) was Scheduled by Gallant, but (ii) was not Scheduled as contingent, unliquidated, and/or disputed, by the applicable Claims Objection Deadline, as the same may be extended by order of the Bankruptcy Court, the Claim to which the proof of claim or scheduled Claim relates will be treated as an Allowed Claim if such Claim has not been allowed earlier. Notice of any motion for an order extending the Claims Objection Deadline shall be required to be given only to those Entities that have requested notice in the Bankruptcy Case, or to such Entities as the Bankruptcy Court shall order.

**10.4 Delivery of Distributions and Undeliverable or Unclaimed Distributions.**

**(a) Delivery of Distributions in General.** Distributions to Holders of Allowed Claims shall be made at such Holder's Distribution Address.

The Trustee shall make the distributions to those with Administrative Claims, including professional fees and Trustee commissions, the single holder of the Class 1 Claim, and to the

Liquidating Trust/Trustee as provided for under this Plan. The Liquidating Trust/Trustee shall make such distributions in accordance with this Plan and the Liquidating Trust Agreement to the Liquidating Trust Beneficiaries.

In making Distributions under this Plan, the Liquidating Trust/Liquidating Trustee may rely upon the accuracy of the claims register in the Bankruptcy Case, as modified by any Final Order of the Bankruptcy Court disallowing Claims in whole or in part.

**(b) Undeliverable and Unclaimed Distributions**. If the Distribution to any Holder of an Allowed Claim is returned to the Liquidating Trust/Liquidating Trustee as undeliverable or is otherwise an Unclaimed Distribution, no further Distributions shall be made to such Holder unless and until the Liquidating Trust/Liquidating Trustee is notified in writing of such Holder's then-current address, at which time all missed Distributions shall be made to such Holder without interest. Unclaimed Distributions shall be returned to the Liquidating Trustee until such Distributions are claimed.

**(c) Treatment of Unclaimed Distributions**.  Any Holder of an Allowed Claim that does not assert a Claim pursuant to this Plan for an Unclaimed Distribution within ninety days (90) months after any final Distribution Date shall be deemed to have forfeited its Claim for such undeliverable or unclaimed Distribution and shall be forever barred and enjoined from asserting any such Claim for an Unclaimed Distribution against Gallant and its Estate, the Liquidating Trust/Liquidating Trustee, and their respective agents, attorneys, representatives, employees or independent contractors, and/or any of its and their property.  In such cases, any Cash otherwise reserved for Unclaimed Distributions shall become the property of Gallant free of any restrictions thereon and notwithstanding any federal or state escheat laws to the contrary, and shall be distributed in accordance with the terms of this Plan and the Liquidating Trust Agreement. Nothing contained in this Plan or the Liquidating Trust Agreement shall require Gallant or the Liquidating Trust to attempt to locate any Holder of an Allowed Claim; *provided, however*, that in his sole discretion, the Liquidating Trust/Liquidating Trustee may periodically publish notice of Unclaimed Distributions.

**10.5  Interest on Claims.**  Except as specifically provided for in this Plan or the Confirmation Order, or required by applicable bankruptcy law, post-petition interest shall not accrue or be paid on any Claims, and no Holder shall be entitled to interest accruing on or after the Petition Date on any Claim. Except as specifically provided for in this Plan or the Confirmation Order, or required by applicable bankruptcy law, interest shall not accrue or be paid upon any Disputed Claim in respect of the period from the Petition Date to the date a final Distribution is made thereon if, and after, such Disputed Claim becomes an Allowed Claim.

**10.6  Withholding and Reporting Requirements**. In connection with this Plan and all Distributions under this Plan, the Liquidating Trust/Liquidating Trustee shall, to the extent applicable, comply with and be solely responsible for all tax withholding, payment, and reporting requirements imposed by any federal, state, local, or foreign taxing authority, and all Distributions under this Plan shall be subject to any such withholding, payment, and reporting requirements. The Liquidating Trust/Liquidating Trustee shall be authorized to take any and all actions that may be necessary or appropriate to comply with such withholding, payment, and reporting requirements. All amounts properly withheld from Distributions to a Holder as required by applicable law and

paid over to the applicable taxing authority for the account of such Holder shall be treated as part of the Distributions to such Holder.

All Entities holding Claims shall be required to provide any information necessary to effect information reporting and withholding of such taxes, including, but not limited to, W-8 and W-9 forms within ninety (90) days of such request.  No Distribution shall be made to or on behalf of such Entity pursuant to this Plan unless and until such Entity has furnished such information. Any property to be distributed pursuant to this Plan shall be deemed: (i) pending the receipt of such information in the manner established by the Liquidating Trust, an Undeliverable Distribution pursuant to Section 10.5 of this Plan; or (ii) if such information is not received by the aforementioned ninety (90) day deadline forfeited and treated in accordance with Section [10.5(d)] of this Plan.

Notwithstanding any other provision of this Plan,: (a) each Holder of an Allowed Claim that is to receive a Distribution pursuant to this Plan shall have sole and exclusive responsibility for the satisfaction and payment of any tax obligations imposed by any governmental unit, including income, withholding, and other tax obligations, on account of such Distribution, and (b) no Distribution shall be made to or on behalf of such Holder pursuant to this Plan unless and until such Holder has made arrangements satisfactory to the Liquidating Trust for the payment and satisfaction of such withholding tax obligations or such tax obligation that would be imposed upon the Liquidating Trust in connection with such Distribution. Any property to be distributed pursuant to this Plan shall be deemed: (i) pending the implementation of such arrangements, an Undeliverable Distribution; or (ii) if such arrangements are not implemented by the deadline established by this Plan, forfeited.

### 10.7 Miscellaneous Distribution Provisions.

**(a) Method of Cash Distributions.** Any Distribution to be made by the Liquidating Trust/Liquidating Trustee pursuant to this Plan will be in Cash and may be made, at the sole discretion of the Liquidating Trustee, by draft, check, wire transfer, or as otherwise required or provided in any relevant agreement or applicable law.  In the case of foreign creditors, Cash payments may be made, at the option of the Liquidating Trust, in such funds and by such means as are necessary or customary in a particular jurisdiction.

**(b) Distributions on Non-Business Days**.  Any payment or Distribution due on a day other than a Business Day shall be made, without interest, on the next Business Day.

### 10.8 De Minimis Distribution Provisions.  No Distribution shall be required to be made hereunder to any Holder of a Claim unless such Holder is entitled to receive in such Distribution at least $100.  Any such Distribution not made in accordance with the provisions of this Article shall be retained by and revest into the Liquidating Trust and invested as provided in this Plan. Any Distribution not made in accordance with this Article to such Holder, shall be held in trust for the relevant Holder until the earlier of (x) the date the next Distribution is scheduled to be made to such Holder; *provided, however,* that such subsequent Distribution, taken together with amounts retained hereby, equals at least $100.

## ARTICLE XI
## CONFIRMATION AND CONSUMMATION OF THE PLAN

**11.1 Conditions to Confirmation.** The following are conditions precedent to the occurrence of the Confirmation Date.

(a) A Final Order finding that the Disclosure Statement contains adequate information pursuant to section 1125 of the Bankruptcy Code shall have been entered by the Bankruptcy Court;

(b) A proposed Confirmation Order that is reasonably acceptable to the Proponent and is approved by the Bankruptcy Court;

(c) All Plan Documents, including the Plan Supplement, are in form and substance reasonably satisfactory to the Proponent and approved by the Bankruptcy Court; and

(d) Approval of all provisions, terms, and conditions hereof shall be contained in the Confirmation Order.

**11.2 Conditions to Effective Date.** The following are conditions precedent to the occurrence of the Effective Date, each of which must be satisfied or waived in writing:

(a) The Confirmation Order shall have been entered and shall provide that the Trustee and the Liquidating Trustee, as applicable, are authorized and directed to take all actions they deem necessary or appropriate to enter into, implement, and consummate the contracts, instruments, releases, leases, indentures, and other agreements or documents created in connection with this Plan and effectuate, advance, or further the purposes thereof;

(b) The Confirmation Order, the Plan, and all Plan Documents, including the Plan Supplement, shall be, in form and substance, reasonably acceptable to the Trustee and the Liquidating Trustee, and shall have been executed and delivered by all parties signatory thereto; and

(c) All other actions, documents, and agreements necessary to implement this Plan shall have been affected or executed.

**11.3 Consequences of Non-Occurrence of Effective Date.** If the Effective Date does not timely occur, the Trustee reserves all rights to seek an order from the Bankruptcy Court directing that the Confirmation Order be vacated and that this Plan be null and void in all respects. If the Bankruptcy Court shall have entered an order vacating the Confirmation Order, the time within which Gallant may assume and assign or reject all Executory Contracts and unexpired leases not previously assumed, assumed and assigned, or rejected, shall be extended for a period of thirty (30) days after the date the Confirmation Order is vacated, without prejudice to further extensions.

## ARTICLE XII
## ADMINISTRATIVE PROVISIONS

**12.1 Retention of Jurisdiction.**  Notwithstanding confirmation of this Plan or occurrence of the Effective Date, and except as otherwise provided by applicable law, the Bankruptcy Court shall retain such jurisdiction as is legally permissible, including for the following purposes:

(a) To determine the allowability, classification, or priority of Claims upon objection of Gallant, the Liquidating Trust/Liquidating Trustee, or any other party in interest entitled to file an objection, and the validity, extent, priority and nonavoidability of consensual and nonconsensual Liens and other encumbrances;

(b) To (i) issue injunctions or take such other actions or make such other orders as may be necessary or appropriate to restrain interference with this Plan or its execution or implementation by any Entity, ~~to~~(ii) construe and to take any other action to enforce and execute this Plan, the Confirmation Order, or any other order of the Bankruptcy Court, ~~to~~(iii) issue such orders as may be necessary for the implementation, execution, performance and consummation of this Plan and all matters referred to herein, and ~~to~~(iv) determine all matters that may be pending before the Bankruptcy Court in the Bankruptcy Case on or before the Effective Date with respect to any Entity;

(c) To protect the property of the Estate, including Gallant's assets, from Claims against, or interference with, such property, including actions to quiet or otherwise clear title to such property or to resolve any dispute concerning Liens on property of the Estate or Gallant's assets;

(d) To determine any and all applications for allowance of Fee Claims;

(e) To determine any Administrative Claims, Administrative Expenses, Priority Tax Claims, Other Priority Claims, or any other request for payment of claims or expenses entitled to priority under section 507(a) of the Bankruptcy Code;

(f) To resolve any disputes arising under, or related to, the implementation, execution, consummation or interpretation of this Plan and the making of Distributions hereunder;

(g) To determine any and all motions related to the rejection, assumption or assignment of Executory Contracts or unexpired leases, or to determine any motion to reject an Executory Contract or unexpired lease;

(h) To determine all applications, motions, adversary proceedings, contested matters, actions, and any other litigated matters instituted in, and prior to the closing of ~~Gallant's~~, the Bankruptcy Case, including any remands, including, but not limited to, those related to any Causes of Action or Chapter 5 Causes of Action;

(i) To enter one or more Final Orders closing the Bankruptcy Case;

(j) To modify this Plan under section 1127 of the Bankruptcy Code, to remedy any defect, cure any omission, or reconcile any inconsistency in this Plan or the Confirmation Order so as to carry out its intent and purposes;

(k) To issue such orders in aid of consummation of this Plan and the Confirmation Order notwithstanding any otherwise applicable non-bankruptcy law, with respect to any Entity, to the full extent authorized by the Bankruptcy Code;

(l) To enable the Liquidating Trust/Liquidating Trustee to prosecute any and all proceedings to set aside Liens and to recover any transfers, assets, properties or damages to which the Estates may be entitled under applicable provisions of the Bankruptcy Code or any other federal, state or local laws except as may be expressly waived pursuant to this Plan;

(m) To determine any tax liability of Gallant pursuant to section 505 of the Bankruptcy Code, and to address any request by the Liquidating Trust/Liquidating Trustee for a prompt audit pursuant to section 505(b) of the Bankruptcy Code;

(n) To enter and implement such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, revoked, modified or vacated;

(o) To resolve any disputes concerning whether an Entity had sufficient notice of the applicable Claims Bar Date as it applies to Gallant, the hearing to consider approval of the Combined Disclosure Statement and Plan, or the Confirmation Hearing;

(p) To resolve any dispute or matter arising under, or in connection with, any order of the Bankruptcy Court entered in the Bankruptcy Case;

(q) To authorize sales of assets as necessary or desirable and resolve objections, if any, to such sales;

(r) To hear and resolve Claims and pending litigations brought by Gallant;

(s) To resolve any disputes concerning any exculpation of a non-debtor hereunder or the injunction against acts, employment of process or actions against such non-debtor arising hereunder;

(t) To approve any Distributions, or objections thereto, under this Plan;

(u) To approve any Claims settlement entered into or offset exercised by the Liquidating Trust/Liquidating Trustee; and

(v) To determine such other matters, and for such other purposes, as may be provided in the Confirmation Order or as may be authorized under provisions of the Bankruptcy Code.

**12.2 Amendments.**

(a) Pre-Confirmation Amendment. The Trustee, in the exercise of her fiduciary duties, may modify this Plan at any time prior to the entry of the Confirmation Order provided that this Plan, as modified, and the Disclosure Statement pertaining thereto meet applicable Bankruptcy Code requirements.

(b) Post-Confirmation Amendment. Not Requiring Resolicitation. After the entry of the Confirmation Order, the Proponent may modify this Plan to remedy any defect or omission or to reconcile any inconsistencies in this Plan or in the Confirmation Order, as may be necessary to carry out the purposes and effects of this Plan, provided that: (i) the Proponent obtains approval of the Bankruptcy Court for such modification, after notice and a hearing; and (ii) such modification shall not materially and adversely affect the interests, rights, treatment or Distributions of any Class of Allowed Claims or Interests under this Plan.

(c) Postconfirmation and Pre-consummation Amendment Requiring Resolicitation. After the Confirmation Date and before substantial consummation of this Plan, the Proponent may modify this Plan in a way that materially and adversely affects the interests, rights, treatment, or Distributions of a Class of Claims or Interests, only if: (i) this Plan, as modified, meets applicable Bankruptcy Code requirements; (ii) the Proponent obtains Court approval for such modification, after notice and a hearing; (iii) such modification is accepted by at least two-thirds in amount, and more than one-half in number, of Allowed Claims voting in each Class materially and adversely affected by such modification; and (iv) Gallant complies with section 1125 of the Bankruptcy Code with respect to this Plan as modified.

**12.3 Successors and Assigns.** The rights, benefits and obligations of any Person or Entity named or referred to in this Plan shall be binding upon, and shall inure to the benefit of, the heirs, executors, administrators, successors and/or assigns of such person or Entity.

**12.4 Governing Law.**  Except to the extent that the Bankruptcy Code, Bankruptcy Rules or other federal laws apply, the rights and obligations arising under this Plan shall be governed by and construed and enforced in accordance with the laws of the State of New York, without giving effect to principles of conflicts of law.

**12.5 Corporate Action.**  Any matters provided for under this Plan involving the corporate structure of Gallant or corporate action, as the case may be, to be taken by, or required of, Gallant shall be deemed to have occurred and be effective as of the Effective Date and shall be authorized and approved in all respects, without any requirement of further action by the Trustee or the Liquidating Trust/Liquidating Trustee, as the case may be.

**12.6 Effectuating Documents and Further Transactions.** The Trustee and the Liquidating Trust/Liquidating Trustee shall be authorized to execute, deliver, file, or record such documents, contracts, instruments, releases, and other agreements and take such other actions as they deem necessary to effectuate and further evidence the terms and conditions of this Plan.

**12.7 Confirmation Order and Plan Control.** To the extent this Plan is inconsistent with the Liquidating Trust Agreement, this Plan controls over the Liquidating Trust Agreement. To the extent the Confirmation Order is inconsistent with this Plan or the Liquidating Trust Agreement, the Confirmation Order (and any other orders of the Bankruptcy Court) controls over this Plan and the Liquidating Trust Agreement.

**12.8 Notices.** All notices or requests in connection with this Plan shall be in writing and will be deemed to have been given when received by mail and addressed to:

**CHAPTER 11 TRUSTEE**
**Esther DuVal as Chapter 11 Trustee**


*s/ Esther DuVal*
Esther DuVal, as Chapter 11 Trustee

| | |
|---|---|
| LAMONICA HERBST & MANISCALCO, LLP | PORZIO, BROMBERG & NEWMAN, P.C. |
| Gary F. Herbst, Esq. | John S. Mairo, Esq. |
| Jacqulyn Somers Loftin, Esq. | Robert M. Schechter, Esq. |
| 3305 Jerusalem Avenue, Suite 201 | David E. Sklar, Esq. |
| Wantagh, New York 11973 | 156 West 56th Street |
| Tel: (516) 826-6500 | New York, New York 10019-3800 |
| gh@lhmlawfirm.com | jsmairo@pbnlaw.com |
| jsl@lhmlawfirm.com | rmschechter@pbnlaw.com |
| *Counsel to the Chapter 11 Trustee* | desklar@pbnlaw.com |
| | *Special Counsel to the Chapter 11 Trustee* |


**12.9 No Admissions or Waiver**. Notwithstanding anything herein to the contrary, nothing contained in this Plan shall be deemed an admission or waiver by the Estate with respect to any matter set forth herein, including liability on any Claim or the propriety of a Claim's classification.